William D. Hyslop
United States Attorney
Eastern District of Washington
Richard C. Burson
Assistant United States Attorneys
402 East Yakima Ave, Suite 210
Yakima, WA 98901
Telephone:  (509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                Plaintiff,

     v.

JAMES DEAN CLOUD,

                Defendant.

Case No.: 1:19-cr-02032-SMJ-1

GOVERNMENT'S EXHIBIT LIST – JUNE 23, 2020 HEARING ON MOTION TO SUPPRESS

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, Thomas J. Hanlon, Assistant United States Attorney for the Eastern District of Washington, and Richard C. Burson, Assistant United States Attorney for the Eastern District of Washington, submits the following United States' Exhibit List for the hearing on Defendant's motion to suppress, currently scheduled for June 23, 2020 at 9:00 a.m. All Exhibits are attached hereto.

1

| Exhibit No. | Description |
|---|---|
| 1 | FBI Procedures for Eyewitness Identification of Suspects Policy Guide - Nov. 26, 2013 |
| 2 | FBI Procedures for Eyewitness Identification of Suspects Policy Guide - Jun. 9, 2019 |
| 3 | Yakima County Sheriff's Office Photographic Line-up Instructions and Results Sheet |
| 4 | Photographic Line-up 5032, June 9, 2019 |
| 5 | Photographic Line-up 5033, June 9, 2019 |
| 6 | Yakama Nation Facebook Post, June 9, 2019, 3:19 p.m. |
| 7 | Yakama Nation Facebook Post, June 9, 2019, 5:12 p.m. |
| 8 | Screenshot of SA Ribail Conversation with J.V. |

Dated:  June 17, 2020.      William D. Hyslop
                            United States Attorney

                            *s/ Richard C. Burson*
                            Richard C. Burson
                            Assistant United States Attorney

2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 17, 2020, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification

of such filing to the following: Lorinda Youngcourt, Esq.; John B. McEntire, IV,

Esq.; Jeremy B. Sporn, Esq.

<p style="margin-left: 40%;">
<u><em>s/Richard C. Burson</em></u>

Richard C. Burson

Assistant United States Attorney
</p>

3

# (U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide



## (U) Federal Bureau of Investigation
## (U) Office of the General Counsel (OGC)
## (U) 0646PG
## (U) November 26, 2013

Government Exhibit 1

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

name and address must not be revealed to the defense lawyer without the consent of the witness.

### 3.7.6.    (U) Live Line-ups Conducted by Local Authorities

(U) In some instances, it may be necessary to use local facilities and personnel to conduct a live line-up. In that event, efforts should be taken to ensure that the procedures used by the local authorities substantially conform to the procedures outlined in this policy guide.

### 3.7.7.    (U) Refusal to Participate

(U) A suspect in custody who does not have a Sixth Amendment right to counsel (see section 3.7.4.) has no right to refuse to participate in a live line-up. If a suspect refuses to participate or refuses to perform acts required in the line-up, he or she must be informed that he or she has no right to refuse. The defendant may be informed that evidence of his refusal might be used against him or her at trial. If the suspect continues to refuse, investigators should consider asking the AUSA to obtain a court order to compel participation or foregoing a live line-up and instead employing photographic identification procedures.

### 3.7.8.    (U) Detention of Suspects for Live Line-ups

(U) When there is no probable cause to arrest or when an arrest is not desirable, there are two ways to compel the suspect to appear in a live line-up:

- (U) Court order: Upon approval of the AUSA, an order may be sought to compel the suspect to appear at a designated place and time for a live line-up. An affidavit supporting such a motion must contain facts establishing that a federal offense has been committed, that there is reason to suspect that the person named or described in the affidavit committed the offense, and that the results of the live line-up will materially assist the government in determining whether the person compelled to participate in the line-up committed the offense.

- (U) Grand jury subpoena: The AUSA may issue a federal grand jury subpoena directing the suspect to appear at a live line-up at a designated time and place.

### 3.8.    (U) Photographic Line-ups (Photographic Arrays)

(U) Photographic line-ups must be conducted to promote the reliability, fairness, and objectivity of the witness' identification. When deciding whether to conduct a photographic lineup, the investigator must consider whether the witness has provided a description of a suspect and must document the description provided. See subsection 3.1.3. The investigator (or administering agent if not the lead investigator) must conduct the photographic line-up in a nonsuggestive manner conducive to obtaining accurate identification or nonidentification results based on the witness' memory, while minimizing the effect of outside influences. The investigator must comply with the procedures discussed below. The primary objectives of these procedures are to minimize suggestiveness by ensuring that nothing is done or said by the FBI to distinguish the suspect's photograph from other photographs in the line-up and to ensure reliability of any identification.

17
UNCLASSIFIED//LES

Government Exhibit 1

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

### 3.8.1. (U) Sequential Administration of Photographic Line-ups

(U) Unless investigative needs dictate otherwise, all FBI photographic line-ups must be conducted in a sequential manner. A sequential photographic line-up is one in which photos are presented to the witness one at a time as opposed to simultaneously.

### 3.8.2. (U) Composing a Photographic Line-up

(U) When composing a photographic line-up, the investigator should:

- (U) Include only one suspect in each photographic line-up and not present the suspect as the first person to be viewed.

- (U) If multiple photos of the suspect are available, the case agent should select the photograph that most resembles the description of the suspect given by witnesses.

- (U) Include a minimum of five fillers (for a total of six photographs) per photographic line-up identification procedure. There must be a reasonable attempt to use photographs of other persons who resemble the suspect. The photo print itself should not be dissimilar to other prints. If the witness provides a limited or inadequate description of the perpetrator or if the description of the perpetrator differs significantly from the appearance of the suspect in the photographic line-up, the fillers must resemble the suspect in his or her significant features.

- (U) When considering unique or unusual features (e.g., scars, tattoos), create a consistent appearance between the suspect and fillers by artificially adding or concealing that particular feature(s).

- (U) Attempt to locate and utilize photographs which do not indicate the persons depicted have engaged in criminal misconduct. Where feasible, photographs without number boards or other indications of criminality should be used. If a mug shot is the only photograph of the suspect that is available, the number board must be covered or masked and similar masking must be used for all filler photographs.

- (U) Ensure that no writings or information concerning previous arrest(s) will be visible to the witness.

- (U) When showing a new suspect, fillers from prior photographic line-ups shown to the same witness may not be reused.

### 3.8.3. (U) Instructing the Witness Prior to Viewing a Photographic Line-up

(U) Before presenting the photographic line-up, the investigator should provide the witness the following instructions. These instructions are designed to facilitate an accurate identification and to ensure that the witness understands that the purpose of the procedure is to exculpate the innocent as well as to identify the guilty.

- (U) The witness will be asked to view a series of photographs.

18
UNCLASSIFIED//LES

Government Exhibit 1

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

- (U) It is just as important to clear innocent persons from suspicion as it is to identify guilty persons.

- (U) Individuals depicted in the photographs may not appear exactly as they did on the date of the incident because features such as head and facial hair are subject to change.

- (U) A photograph of the person who committed the crime may or may not be among the photographs being presented.

- (U) If the witness sees a photograph of the perpetrator, tell the investigator. The investigator will continue showing the witness the remaining pictures. If the witness sees a subsequent picture that makes the witness reconsider a prior identification, tell the investigator. After the witness has seen all the photographs, if the witness wants to see one or more photographs again, the investigator will show them again.

- (U) Whether or not the witness identifies a photograph as the perpetrator, law enforcement will continue to investigate the incident.

- (U) The witness need not pick anyone or be certain if he or she does pick someone. If the witness make an identification, the investigator will ask how certain the witness is of the identification.

### 3.8.4.    (U) Sequential Photographic Line-up Identification Procedures

(U) The display of photographs must not be impermissibly suggestive. Therefore, when presenting a sequential photographic line-up, the investigator should:

- (U) Provide the instructions to the witness as outlined in subsection 3.8.1.3., "Instructing the Witness Prior to Viewing a Photographic Line-up."

- (U) Confirm that the witness understands how the photographic line-up will be conducted.

- (U) Do not advise the witness how many photographs he or she will be asked to view.

- (U) Present each photo to the witness separately in the order determined in step one. After the witness has viewed a photograph, remove it from view before presenting the next photograph.

- (U) If the witness identifies a photograph, continue to show the witness the remaining photographs at the same pace as the other photographs. If, after seeing all of the photographs, the witness wishes to see again a particular photograph, show that photograph with other photographs out of view.

- (U) Record any identification results and the witness' statement of certainty as described in subsection 3.8.1.5., "Recording Identification Results."

- (U) Document in writing the photographic line-up procedures, including:

    o (U) Identification information and sources of all photos used.

Government Exhibit 1

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

- o (U) The order in which the photographs were shown to the witness and whether any photograph was shown to the witness more than once (and if so, indicated which photos).

- o (U) Names of all persons present at the photographic line-up.

- o (U) Date, time, and place of the photographic line-up identification procedure.

- (U) Ask that the witness not discuss the photographic line-up identification procedure, or its results, with any other witness involved in the case and request the witness not have contact with the media.

- (U) Multiple witnesses must not view the photographic lineup together and the investigator must request that the witnesses avoid discussing details of the incident with other potential witnesses.

- (U) In the event of a positive identification during the photographic line-up, the witness should be asked to provide and sign a statement articulating the reasons he or she identified the person.

### 3.9.    (U) Recording Identification Results

(U) The investigator must preserve the outcome of the photographic line-up by accurately and completely recording any identification or nonidentification results obtained from the witness. A complete record of the procedure can be a critical document in the investigation and in subsequent court proceedings.

(U) As noted in section 3.8.1.4.(6), the investigator must prepare a FD-302 reflecting how and where the photographic line-up was held. The report must also include the names of all photographic line-up participants. Other investigators assisting in the line-up must prepare reports describing their roles in the line-up. In documenting the line-up, the investigator must:

- (U) Ensure that no materials indicating previous identification results can be seen by the witness.

- (U) Record both identification and nonidentification results in writing, including the witness' statement regarding his or her degree of certainty.

- (U) Ensure results are signed and dated by the witness.

- (U) Ensure that the witness does not write on or mark any materials that will be used in other identification procedures.

(U) Documentation must be created or imported into the case file in the central recordkeeping system and any other authorized and subsequent recordkeeping system.

### 3.10.    (U) Retention of Photographs

(U) All photographs shown to witnesses for the purpose of identifying the suspect, whether or not an identification was made, must be specifically identified and remain under the control of the field office or made recoverable so that they can be produced if

Government Exhibit 1

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

necessary. The photographs must be imported into the case file in an 1A envelope and a physical copy must be maintained in an 1A envelope in a paper case file. In addition, the presentation order of the photographic line-up must be recorded and preserved.

**3.11.    (U) Right to Counsel**

(U) A suspect does not have the right to have his or her attorney present at a photographic line-up, whether the line-up is before or after arrest or the filing of a formal charge by an indictment or information.

Government Exhibit 1

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Guide

# (U) Procedures for Eyewitness Identification of Suspects

## Policy Guide



## (U) Federal Bureau of Investigation

## (U) Office of the General Counsel

## (U) 1047PG

## (U) June 9, 2019

Government Exhibit 2

(U) Procedures for Eyewitness Identification of Suspects Policy Guide

(U) If the suspect waives his or her right to counsel pursuant to subsection 4.6.3.5. of this PG, the employee must document the circumstances and voluntariness of the waiver in Sentinel.

(U) Any additional records associated with a live lineup procedure (e.g., a photograph, a video, a signed witness statement, or the original FD-404) must be maintained in the case file.

## 4.7.    (U) Photographic Lineups (Photographic Arrays)

(U) Photographic lineups may be conducted either sequentially or simultaneously. A sequential photographic lineup is one in which photographs are presented to the witness one at a time to make an identification. A simultaneous photographic lineup is one in which all photographs (both suspect and fillers) are shown to the witness at the same time.

### 4.7.1.    (U) Using Photographic Lineups

(U) All photographic lineups must be composed and conducted in a manner that promotes the reliability, fairness, and objectivity of the witness's identification. Employees must not say or do anything, even unintentionally, to distinguish the suspect's photograph from the fillers' photographs. When deciding whether to conduct a photographic lineup, the employee must consider whether the witness has provided a description of the suspect. If provided, the employee must document the description.

#### 4.7.1.1.    (U) Assembling Photographic Lineups

(U) When assembling a photographic lineup, an employee should:

- (U) Prepare a separate photographic lineup for each suspect.

- (U) Select a photograph of the suspect that resembles the witness's description of the perpetrator or the perpetrator's appearance at the time of the incident.

- (U) Avoid using photographs that are outdated or are substantially dissimilar from the witness's description of the perpetrator.

- (U) Include at least five filler photographs that generally fit the witness's description of the perpetrator.

- (U) Consider creating a consistent appearance between the suspect and fillers by artificially adding or concealing any unique or unusual features (e.g., scars or tattoos).

- (U) Select photographs that are of similar size, background, format, and color.

- (U) Not reuse photographs previously shown to the same witness.

- (U) Attempt to use photographs that do not indicate criminal misconduct (e.g., booking photographs). If a booking photo is the only available photograph of the suspect, the number board or other indicia of prior arrest should be covered or masked and similar masking must be used for all filler photographs.

#### 4.7.1.2.    (U) Administration Procedures

(U) When presenting a photographic lineup, an employee should:

- (U) Conduct the procedure separately for each witness.

15

Government Exhibit 2

(U) Procedures for Eyewitness Identification of Suspects Policy Guide

- (U) Provide instructions to the witness as described in subsection 4.7.2., "Instructing the Witness," of this PG.

- (U) Conduct the photographic lineup in a location that does not expose the witness to information or evidence that could influence the witness's identification.

- (U) Ensure that neither the suspect nor any photographs of the suspect are visible where the witness will be present.

- (U) Consider using "blind" or "blinded" administration techniques.[5]

- (U) Not allow the witness to observe or overhear other witnesses during the procedure.

- (U) Allow the witness as much time as needed to view the photographs.

- (U) Avoid providing the witness any feedback regarding an identification.

- (U) Ask the witness how confident he or she is regarding any identification made.

- (U) Consider the value of audio or video recording the procedure. (See DIOG subsection 18.5.6.4.17.2, "Recorded Noncustodial Interviews," for approval and documentation requirements for recordings containing audio content.)

- (U) Have the witness initial and date the chosen photograph, if the witness makes an identification.

- (U) Request that the witness not discuss the identification procedure or its results with other witnesses involved in the case or have contact with the media.[6] (U) In addition, for sequential photographic lineups, an employee should:

- (U) Not advise the witness how many photographs he or she will be asked to view.

- (U) Present each photo to the witness separately, and remove each from view before presenting the next photograph.

- (U) Show all photographs at the same pace, even if the witness identifies a photograph.

- (U) Allow the witness to view any of the photographs again upon request.

### 4.7.2.     (U) Instructing the Witness

(U) Before presenting a photographic lineup, the employee should provide the witness instructions that are designed to facilitate an accurate identification and to ensure that the witness understands the purpose of the procedure is to ensure a fair and reliable result. The following is an example of instruction language for a photographic lineup:

> [U] In a moment, you will be shown a group of photographs. It is just as important to clear innocent persons from suspicion as it is to identify guilty persons. The group of photographs may or may not contain a photograph of the person who committed the crime. Sometimes a person may look

---

[5] (U) In a blind administration technique, the administrator is not involved in the investigation and does not know what the suspect looks like. In a blinded administration technique, the photographs are shielded from the administrator's view so he or she cannot see the placement of the suspect's photograph, even if he or she knows what the suspect looks like. The use of blind or blinded administration of photo arrays is strongly encouraged whenever practicable.

[6] (U) Unless directed by the court, a witness must never be ordered not to talk to potential witnesses, the media, or any other persons.

Government Exhibit 2

Case 1:19-cr-02032-SMJ    ECF No. 155-8 filed 06/30/2020   PageID.1822  Page 34 of 34
UNCLASSIFIED//LES
(U) Procedures for Eyewitness Identification of Suspects Policy Guide

different in a photograph than in real life because of different hair styles, facial hair, glasses, a hat, or other changes in appearance. Keep in mind that how a photograph was taken or developed may make a person's complexion look lighter or darker than in real life. Please let me know if you recognize the person who committed the crime (or the actions you witnessed). If you do recognize someone, please tell me how confident you are of your identification. You may not recognize anyone. That is okay. Just say so. Do not assume that I know who committed this crime. Pay no attention to any markings or numbers on the photographs or any differences in the type or style of the photographs. They are not relevant to identifying anyone in the photographs. Please do not

discuss this procedure or any photograph that you may pick with any other witness in the case. Please let me know if you do not understand these instructions or if you have any questions. (U) If a sequential photographic lineup will be used, in addition to providing the instruction language above, the employee should also provide the witness instruction language for this specific technique. The following is an example of instruction language for a sequential photographic lineup:

[U] You are going to look at the photographs one at a time. You may make a decision at any time. If you select a photograph before you get to the end, our protocol requires that you look at the rest of the photographs anyway. If after seeing all of the photographs you want to see one or more photographs again, you should look at the entire array again.

### 4.7.3. (U) Right to Counsel

(U) A suspect does not have the right to have his or her attorney present at a photographic lineup, regardless if the lineup is before or after an arrest or the filing of a formal charge by an indictment or information. A photo lineup or a photo array is not a critical stage for the purposes of the Sixth Amendment.

### 4.7.4. (U) Documenting the Use of Photographic Lineups

(U) After conducting a photographic lineup, the employee must document the use of the technique in Sentinel. Documentation should include:

- (U) All identification or nonidentification results.
- (U) The approximate date, time, and location of the photographic lineup.
- (U) The procedures used in the photographic lineup (i.e., sequential or simultaneous).
- (U) A summary of the instructions provided to the witness.
- (U) The identification information and source of all photographs used.
- (U) Any alterations made to either the suspect's or fillers' photographs, including the reason for the alterations (e.g., to conceal prison number board).
- (U) The presentation order of the photographs and whether any photograph was shown to the witness more than once.
- (U) The names of all persons present during the photographic lineup.
- (U) The witness's stated degree of certainty for both identification and nonidentification results.
- (U) The approximate amount of time the witness required to make an identification, if applicable.

Government Exhibit 2

(U) Procedures for Eyewitness Identification of Suspects Policy Guide

- • (U) The reason for not using blind or blinded administration, if applicable.

(U) Any original records associated with the photographic line up procedure (e.g., all photographs shown to the witness, recordings of the procedure, or signed witness statements) must be maintained in the case file.

Government Exhibit 2

(U) Procedures for Eyewitness Identification of Suspects Policy Guide

# 5. (U) Authorities

- (U) Constitution of the United States
- (U) *The Attorney General's Guidelines for Domestic FBI Operations* (AGG-Dom), as amended
- (U) Department of Justice (DOJ) memorandum, "Eyewitness Identification: Procedures for Conducting Photo Arrays" (01/06/2017)

15

Government Exhibit 2

(U) Procedures for Eyewitness Identification of Suspects Policy Guide

# Appendix A: (U) References

(U) See the OGC Main Law Library for additional information.

Government Exhibit 2



## YAKIMA COUNTY SHERIFF'S OFFICE
P.O. Box 1388, YAKIMA, WASHINGTON 98907    Telephone (509) 574-2500
Toll Free 1-800-572-0490
Fax (509) 574-2621

Ken Irwin,    Sheriff

## YAKIMA COUNTY SHERIFF'S DEPARTMENT

### PHOTOGRAPHIC LINE-UP

### INSTRUCTIONS

CASE #_____

You are about to be shown a group of photographs. Before you view these photographs, please read the following carefully:

1. Because an officer is showing you a group of photographs, this should not influence your judgment in any way.

2. The person who committed the crime may or may not be in this group of photographs.

3. It is just as important to eliminate innocent persons as it is to identity those persons responsible.

4. You are in no way obligated to identify anyone.

5. Study each photograph carefully before making any comments. Consider that the photographs could be old or new, that the hair styles change and those persons can alter their appearance by growing or shaving facial hair.

6. Special instructions:_____
_____
_____

I declare that no other instructions about the photographs or the subject were given to me before viewing this photographic line-up.

_____    6/9/19

Person viewing the photo line-up                      Date

_____    6/9/19

Officer showing the photo line-up                      Date

Photo number selected
5035 None    5033 None
5034 4    5032 6

Comments:
5035 No females Scene
5034 #4 looks similar the eyes, more facial hair, shotgun
5033 had rounded cheeks like 5 shotgun
5032 looks like guy had pistol to son's head, facial hair, weight, hair tewed up almost won't

(If the person selects a photograph, have them place their signature along with the date and time of selection on the back of the ph

John Verwey

Government Exhibit 3

Lineup: 5032                                    6/9/2019 11:49:33 AM

| Position | Name Number | Name |
|----------|-------------|------|
| 1. | 10684 | ████████████████████ |
| 2. | 4027 | ████████████████ |
| 3. | 20020 | ██████████████████████ |
| 4. | 2822 | ████████████ |
| 5. | 185 | ███████████████ |
| 6. | 140409 | CLOUD, DONOVAN QUINN CART |

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 4

Lineup: 5032                                                    6/9/2019 11:49:33 AM



**1**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 4

Lineup: 5032                                                      6/9/2019 11:49:33 AM



**2**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 4

Lineup: 5032                                              6/9/2019 11:49:33 AM



**3**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 4

Lineup: 5032

6/9/2019 11:49:33 AM



**4**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 4

Lineup: 5032                                          6/9/2019 11:49:33 AM



**5**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 4

Lineup: 5032                                              6/9/2019 11:49:33 AM



**6**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 4

Lineup: 5033

6/9/2019 11:58:15 AM

| Position | Name Number | Name |
|---|---|---|
| 1. | 23856 | ██████████████ |
| 2. | 7166 | CLOUD, JAMES DEAN |
| 3. | 85395 | ██████████████ |
| 4. | 51017 | ████████E, ████████ |
| 5. | 28653 | ██████████████ |
| 6. | 98982 | ██████████ |

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 5

Lineup: 5033                                                    6/9/2019 11:58:15 AM



1

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 5

Lineup: 5033                                    6/9/2019 11:58:15 AM



**2**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 5

Lineup: 5033                                    6/9/2019 11:58:15 AM



3

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 5

Lineup: 5033                                    6/9/2019 11:58:15 AM



**4**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 5

Lineup: 5033                                          6/9/2019 11:58:15 AM



**5**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 5

Lineup: 5033                                      6/9/2019 11:58:15 AM



**6**

Copyright © 2019 Motorola Solutions, Inc. ALL RIGHTS RESERVED

Government Exhibit 5

# Yakama Nation Info

Jun 9, 2019 at 3:19 PM · 🌐

# *IMPORTANT ANNOUNCEMENT*



Confederated Tribes and Bands
of the Yakama Nation

Established by the
Treaty of June 9, 1855

FOR IMMEDIATE RELEASE – JUNE 9, 2019

### All Suspects Connected to Five Murders Have Been Apprehended

**TOPPENISH, WA** – All suspects wanted in connection with five homicides that occurred on the Yakama Reservation on Saturday, June 8, 2019, are in custody. The remaining two suspects were apprehended at 2:00 pm today. At this time there are no further suspects wanted. We would like to thank all law enforcement agencies that supported the apprehension of these dangerous subjects. We appreciate all the support from the community during this investigation.

###

Government Exhibit 6

# Yakama Nation Info

Jun 9, 2019 at 5:12 PM • 🌐

# ***UPDATED INFORMATION***



Confederated Tribes and Bands
of the Yakama Nation

Established by the
Treaty of June 9, 1855

FOR IMMEDIATE RELEASE – JUNE 9, 2019 (5:00 pm)

### *UPDATED INFORMATION*

### ONE SUSPECT REMAINS AT LARGE IN RESERVATION MURDERS

TOPPENISH, WA – Due to misidentification, one suspect remains at large in the five murders that were committed on the Yakama Reservation on Saturday, June 8, 2019. James Cloud (07/08/1983), who is pictured below, is still being sought by law enforcement agencies. James is considered armed and extremely dangerous, if you see this subject do not approach him, and call 911. If you know his whereabouts please call 911 immediately.



###

Government Exhibit 7



‹  JE▓ V▓▓▓▓▓▓▓▓   📞  🔍  ⋮

Friday, July 12, 2019

**J** Donavon Cloud is armed and extremely dangerous. He murdered 5 people in white swan last night and is believed to be headed over here. He resides at the Long House on Canyon Rd. and Lyle point. Recommend people be sure their out buildings are locked and secure. This info is coming from the police scanner. Be safe friends!! Report him if you see him, don't approach him! The picture is his public Facebook photo.

Update:
They are looking for him in connection to the case, he and two others, one male one female.



MMS 2:59 PM

Can you send the webpage link too? Thanks

3:01 PM

**J** I will try and find it. 3:09 PM

**J** https://www.facebook.com/871858746169694/posts/2366959493326271?metadata=tIsZTZkgiRZm2i1Ng7nwCGcM9d5i3NIFmpTyQ/5qvYrjyUswaQApIB4dpdnG9D79Z9Rz08kPD+0SSlSsa6o7SXbO77HKLIIFjT+UqalqNR8J5faB5Nog7TNg1wU0g86H&sfns=mo

3:17 PM

＋  Enter message  🖼 🎙

Government Exhibit 8