UNCLASSIFIED//LES
(U) Procedures for Eyewitness Identification of Suspects Policy Guide

# (U) Procedures for Eyewitness Identification of Suspects Policy Guide



## (U) Federal Bureau of Investigation

## (U) Office of the General Counsel

## (U) 1047PG

## (U) June 9, 2019

**UNCLASSIFIED//LES**
(U) Procedures for Eyewitness Identification of Suspects Policy Guide

(U) If the suspect waives his or her right to counsel pursuant to subsection 4.6.3.5. of this PG, the employee must document the circumstances and voluntariness of the waiver in Sentinel.

(U) Any additional records associated with a live lineup procedure (e.g., a photograph, a video, a signed witness statement, or the original FD-404) must be maintained in the case file.

### 4.7.     (U) Photographic Lineups (Photographic Arrays)

(U) Photographic lineups may be conducted either sequentially or simultaneously. A sequential photographic lineup is one in which photographs are presented to the witness one at a time to make an identification. A simultaneous photographic lineup is one in which all photographs (both suspect and fillers) are shown to the witness at the same time.

### 4.7.1.     (U) Using Photographic Lineups

(U) All photographic lineups must be composed and conducted in a manner that promotes the reliability, fairness, and objectivity of the witness's identification. Employees must not say or do anything, even unintentionally, to distinguish the suspect's photograph from the fillers' photographs. When deciding whether to conduct a photographic lineup, the employee must consider whether the witness has provided a description of the suspect. If provided, the employee must document the description.

### 4.7.1.1.     (U) Assembling Photographic Lineups

(U) When assembling a photographic lineup, an employee should:

- (U) Prepare a separate photographic lineup for each suspect.
- (U) Select a photograph of the suspect that resembles the witness's description of the perpetrator or the perpetrator's appearance at the time of the incident.
- (U) Avoid using photographs that are outdated or are substantially dissimilar from the witness's description of the perpetrator.
- (U) Include at least five filler photographs that generally fit the witness's description of the perpetrator.
- (U) Consider creating a consistent appearance between the suspect and fillers by artificially adding or concealing any unique or unusual features (e.g., scars or tattoos).
- (U) Select photographs that are of similar size, background, format, and color.
- (U) Not reuse photographs previously shown to the same witness.
- (U) Attempt to use photographs that do not indicate criminal misconduct (e.g., booking photographs). If a booking photo is the only available photograph of the suspect, the number board or other indicia of prior arrest should be covered or masked and similar masking must be used for all filler photographs.

### 4.7.1.2.     (U) Administration Procedures

(U) When presenting a photographic lineup, an employee should:

- (U) Conduct the procedure separately for each witness.

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Guide

- (U) Provide instructions to the witness as described in subsection 4.7.2., "Instructing the Witness," of this PG.
- (U) Conduct the photographic lineup in a location that does not expose the witness to information or evidence that could influence the witness's identification.
- (U) Ensure that neither the suspect nor any photographs of the suspect are visible where the witness will be present.
- (U) Consider using "blind" or "blinded" administration techniques.[5]
- (U) Not allow the witness to observe or overhear other witnesses during the procedure.
- (U) Allow the witness as much time as needed to view the photographs.
- (U) Avoid providing the witness any feedback regarding an identification.
- (U) Ask the witness how confident he or she is regarding any identification made.
- (U) Consider the value of audio or video recording the procedure. (See DIOG subsection 18.5.6.4.17.2, "Recorded Noncustodial Interviews," for approval and documentation requirements for recordings containing audio content.)
- (U) Have the witness initial and date the chosen photograph, if the witness makes an identification.
- (U) Request that the witness not discuss the identification procedure or its results with other witnesses involved in the case or have contact with the media.[6] (U) In addition, for sequential photographic lineups, an employee should:
- (U) Not advise the witness how many photographs he or she will be asked to view.
- (U) Present each photo to the witness separately, and remove each from view before presenting the next photograph.
- (U) Show all photographs at the same pace, even if the witness identifies a photograph.
- (U) Allow the witness to view any of the photographs again upon request.

**4.7.2.    (U) Instructing the Witness**

(U) Before presenting a photographic lineup, the employee should provide the witness instructions that are designed to facilitate an accurate identification and to ensure that the witness understands the purpose of the procedure is to ensure a fair and reliable result. The following is an example of instruction language for a photographic lineup:

> [U] In a moment, you will be shown a group of photographs. It is just as important to clear innocent persons from suspicion as it is to identify guilty persons. The group of photographs may or may not contain a photograph of the person who committed the crime. Sometimes a person may look

---

[5] (U) In a blind administration technique, the administrator is not involved in the investigation and does not know what the suspect looks like. In a blinded administration technique, the photographs are shielded from the administrator's view so he or she cannot see the placement of the suspect's photograph, even if he or she knows what the suspect looks like. The use of blind or blinded administration of photo arrays is strongly encouraged whenever practicable.

[6] (U) Unless directed by the court, a witness must never be ordered not to talk to potential witnesses, the media, or any other persons.

**UNCLASSIFIED//LES**

different in a photograph than in real life because of different hair styles, facial hair, glasses, a hat, or other changes in appearance. Keep in mind that how a photograph was taken or developed may make a person's complexion look lighter or darker than in real life. Please let me know if you recognize the person who committed the crime (or the actions you witnessed). If you do recognize someone, please tell me how confident you are of your identification. You may not recognize anyone. That is okay. Just say so. Do not assume that I know who committed this crime. Pay no attention to any markings or numbers on the photographs or any differences in the type or style of the photographs. They are not relevant to identifying anyone in the photographs. Please do not discuss this procedure or any photograph that you may pick with any other witness in the case. Please let me know if you do not understand these instructions or if you have any questions. (U) If a sequential photographic lineup will be used, in addition to providing the instruction language above, the employee should also provide the witness instruction language for this specific technique. The following is an example of instruction language for a sequential photographic lineup:

[U] You are going to look at the photographs one at a time. You may make a decision at any time. If you select a photograph before you get to the end, our protocol requires that you look at the rest of the photographs anyway. If after seeing all of the photographs you want to see one or more photographs again, you should look at the entire array again.

### 4.7.3.   (U) Right to Counsel

(U) A suspect does not have the right to have his or her attorney present at a photographic lineup, regardless if the lineup is before or after an arrest or the filing of a formal charge by an indictment or information. A photo lineup or a photo array is not a critical stage for the purposes of the Sixth Amendment.

### 4.7.4.   (U) Documenting the Use of Photographic Lineups

(U) After conducting a photographic lineup, the employee must document the use of the technique in Sentinel. Documentation should include:

- (U) All identification or nonidentification results.
- (U) The approximate date, time, and location of the photographic lineup.
- (U) The procedures used in the photographic lineup (i.e., sequential or simultaneous).
- (U) A summary of the instructions provided to the witness.
- (U) The identification information and source of all photographs used.
- (U) Any alterations made to either the suspect's or fillers' photographs, including the reason for the alterations (e.g., to conceal prison number board).
- (U) The presentation order of the photographs and whether any photograph was shown to the witness more than once.
- (U) The names of all persons present during the photographic lineup.
- (U) The witness's stated degree of certainty for both identification and nonidentification results.
- (U) The approximate amount of time the witness required to make an identification, if applicable.

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Guide

- (U) The reason for not using blind or blinded administration, if applicable.

(U) Any original records associated with the photographic line up procedure (e.g., all photographs shown to the witness, recordings of the procedure, or signed witness statements) must be maintained in the case file.

## 5. (U) Authorities

- (U) Constitution of the United States
- (U) *The Attorney General's Guidelines for Domestic FBI Operations* (AGG-Dom), as amended
- (U) Department of Justice (DOJ) memorandum, "Eyewitness Identification: Procedures for Conducting Photo Arrays" (01/06/2017)

**UNCLASSIFIED//LES**
(U) Procedures for Eyewitness Identification of Suspects Policy Guide

## Appendix A: (U) References

(U) See the OGC Main Law Library for additional information.