UNCLASSIFIED//LES

# (U) Procedures for Eyewitness Identification of Suspects

## Corporate Policy Directive and

## Policy Implementation Guide



## (U) Federal Bureau of Investigation

## (U) Office of the General Counsel

## (U) 0646DPG

## (U) Published Date: November 26, 2013

## (U) Review Date: November 26, 2016

**(U) Note:** This document incorporates the Corporate Policy Directive and the Policy Implementation Guide.

UNCLASSIFIED//LES



DEFENDANT'S
EXHIBIT

CASE
NO. 19-2032-1

EXHIBIT
NO. 1023

UNCLASSIFIED//LES

UNCLASSIFIED



FEDERAL BUREAU OF INVESTIGATION
## CORPORATE POLICY DIRECTIVE

### 0646D

| | |
|---|---|
| **1. Policy Directive Title.** | Procedures for Eyewitness Identification of Suspects |
| **2. Publication Date.** | 2013-11-26 |
| **3. Effective Date.** | 2013-11-26 |
| **4. Review Date.** | 2016-11-26 |

**5. Primary Strategic Objective.**

P1-Streamline administrative and operational processes.

**6. Authorities:**

6.1. Constitution of the United States

6.2. *Attorney General Guidelines for Domestic Operations* (AGG-DOM) dated 12/01/2008

**7. Purpose:**

The purpose of this policy is to implement the *Procedures for Eyewitness Identification of Suspects Policy Implementation Guide* (PG).

**8. Policy Statement:**

All FBI employees must abide by the procedures for conducting eyewitness identifications as set forth in the *Procedures for Eyewitness Identification of Suspects Policy Implementation Guide*.

**9. Scope:**

Investigating agents, FBI police officers, chief division counsels, associate division counsels, supervisory special agents, and all others involved in using eyewitness identification techniques.

**10. Proponent:**

Office of the General Counsel, Investigative Law and Investigative Law and Training Branch, Legal Instruction Unit

**11. Roles and Responsibilities:**

Refer to Section 2.0 of the *Procedures for Eyewitness Identification of Suspects Policy Implementation Guide*.

**12. Exemptions:**

UNCLASSIFIED//LES

| |
|---|
| None |

**13. Supersession:**

13.1. *Legal Handbook for Special Agents*, Section 6

13.2. *Manual of Investigative Operations and Guidelines* Part II, Section 7-8

**14. References, Key Words, and Links:**

14.1. OGC Main Law Library

14.2. FBI *Domestic Investigations and Operations Guide* (DIOG) dated 10/15/2011 and approved subsequent iterations

**15. Definitions**

See Appendix B, Procedures for Eyewitness Identification of Suspects PG.

**16. Appendices, Attachments, and Forms:**

Appendix A: References
Appendix B: Acronyms

| Sponsoring Executive Approval | |
|---|---|
| **Name:** | Andrew Weissmann |
| **Title:** | General Counsel |
| **Stakeholder Executive Approval** | |
| **Name:** | Kevin L. Perkins |
| **Title:** | Associate Deputy Director |
| **Final Approval** | |
| **Name:** | Sean M. Joyce |
| **Title:** | Deputy Director |

UNCLASSIFIED

# (U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide



## (U) Federal Bureau of Investigation
## (U) Office of the General Counsel (OGC)
## (U) 0646PG
## (U) November 26, 2013

UNCLASSIFIED//LES
(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

### (U) General Information

(U) Questions or comments pertaining to this policy implementation guide can be directed to:

(U) Federal Bureau of Investigation Headquarters, Office of the General Counsel, Division 09

(U) Division point of contact: deputy general counsel, Investigative Law and Training Branch 202-324-8067

### (U) Supersession Information

(U) This document supersedes all policies pertaining to legal issues associated with eyewitness identification. Part II, Section 7-8 of the Manual of Investigative Operations and Guidelines (MIOG) is superseded by this policy guide.

(U) This document is a new publication; no previous versions are available.

(U) This document and its contents are the property of the FBI. If the document or its contents are provided to an outside agency, it and its contents are not to be distributed outside of that agency without the written permission of the unit or individual(s) listed in the contact section of this policy implementation guide.

(U) LAW ENFORCEMENT SENSITIVE: The information marked (U//LES) in this document is the property of the Federal Bureau of Investigation and is for internal use within the FBI only. Distribution outside the FBI without the Office of the General Counsel's authorization is prohibited. Precautions must be taken to ensure this information is stored and/or destroyed in a manner that precludes unauthorized access. Information bearing the LES caveat may not be used in legal proceedings without first receiving authorization from the originating agency. Recipients are prohibited from subsequently posting the information marked LES on a Web site on an unclassified network.

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

# (U) Table of Contents

1.  **(U) Introduction** .......................................................................................... 1

2.  **(U) Roles and Responsibilities** ................................................................. 2
    2.1.  (U) Investigating Agents, FBI Police Officers, and All Others Gathering
    Eyewitness Identification Evidence ......................................................................... 2
    2.2.  (U) Supervisory Special Agents and All Others Spervising the Gathering of
    Eyewitness Identication Evidence ........................................................................... 2
    2.3.  (U) Chief Division Counsel (CDC) ............................................................ 2
    2.4.  (U) Office of the General Counsel (OGC) ................................................. 2

3.  **(U) Policies and Procedures** ...................................................................... 3
    3.1.  (U) Initial Contacts and Interviewing Techniques–Basic Principles ............ 3
        3.1.1.  (U//LES) Obtaining Information from a Witness ................................ 3
        3.1.2.  (U//LES) Follow-Up Interviews with a Witness ................................ 3
        3.1.3.  (U) Recording Witness Recollections ................................................ 4
        3.1.4.  (U) Assessing the Credibility of Individual Elements of a Witness'
        Statement .................................................................................................... 5
        3.1.5.  (U) Maintaining Contact with the Witness ........................................ 5
    3.2.  (U//LES) Decision to Use an Eyewitness Identification Technique ............... 5
    3.3.  (U) Mug Books ............................................................................................ 6
        3.3.1.  (U) Use of Mug Books .................................................................... 6
        3.3.2.  (U) Instructing the Witness ............................................................ 7
        3.3.3.  (U) Documenting the Procedure ...................................................... 7
    3.4.  (U) Composite Images ................................................................................ 7
        3.4.1.  (U) Developing and Using Composite Images ................................... 7
        3.4.2.  (U) Instructing the Witness ............................................................ 8
        3.4.3.  (U) Documenting the Procedure ...................................................... 8
    3.5.  (U) Field Identification Procedures (Show-Ups) ........................................... 8
        3.5.1.  (U) Use of the Procedure ................................................................ 9
        3.5.2.  (U) Conducting Show-Ups ............................................................... 9
        3.5.3.  (U) Place of Confrontation .............................................................. 10
        3.5.4.  (U) Multiple Witnesses .................................................................... 10
        3.5.5.  (U) Right to Counsel ....................................................................... 10
        3.5.6.  (U) Recording Show-up Results ...................................................... 10
    3.6.  (U) Live Line Ups ...................................................................................... 11
        3.6.1.  (U) Sequential Administration of Live Line-Ups ................................ 11
        3.6.2.  (U//LES) Composing Live Line-Ups ................................................. 11
        3.6.3.  (U) Instructing the Witness Prior to Viewing a Live Line-Up ............... 12
        3.6.4.  (U//LES) Sequential Live Line-up Identification Procedures ............... 13
        3.6.5.  (U) Recording Identification Results ................................................. 14
    3.7.  (U) Notice to AUSA and Defense Counsel .................................................. 14
        3.7.1.  (U) Defense Objections to Proposed Line-ups ................................... 14
        3.7.2.  (U) Right to Counsel ....................................................................... 14
        3.7.3.  (U) Waiver of Counsel ..................................................................... 15

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

        3.7.4.    (U) Substitute Counsel ................................................................. 16
        3.7.5.    (U) Role of Defense Counsel ...................................................... 16
        3.7.6.    (U) Live Line-ups Conducted by Local Authorities ................................... 17
        3.7.7.    (U) Refusal to Participate ........................................................ 17
        3.7.8.    (U) Detention of Suspects for Live Line-ups ...................................... 17
    3.8.    (U) Photographic Line-ups (Photographic Arrays) ......................................... 17
        3.8.1.    (U) Sequential Administration of Photographic Line-ups .......................... 18
        3.8.2.    (U) Composing a Photographic Line-up ........................................... 18
        3.8.3.    (U) Instructing the Witness Prior to Viewing a Photographic Line-up ...... 18
        3.8.4.    (U) Sequential Photographic Line-up Identification Procedures ................ 19
    3.9.    (U) Recording Identification Results ...................................................... 20
    3.10.    (U) Retention of Photographs .......................................................... 20
    3.11.    (U) Right to Counsel .................................................................... 21

## (U) List of Appendices

Appendix A:  Contact Information ................................................................... A-1

Appendix B:  Key Words and Acronyms ............................................................. B-1

UNCLASSIFIED//LES

**UNCLASSIFIED//LES**
(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

# 1. (U) Introduction

**(U) Purpose**—The *Procedures for Eyewitness Identification of Suspects Policy Implementation Guide* contains guidance to assist FBI employees involved in gathering eyewitness identifications of suspects as part of an investigation. This policy implementation guide provides guidance to ensure that eyewitness identifications conform to best practices and preserve evidence for use in an ongoing investigation or trial.

**(U) Intended Audience**—This policy guide is to be followed immediately by all FBIHQ divisions, field offices, and legal attaché (LEGAT) offices.

**(U) Background**—Eyewitnesses play a vital role in the administration of justice. An eyewitness may be able to provide a general description of the perpetrator (e.g., height, weight, clothing) or may be the key to identifying, charging, or convicting a suspect in a criminal investigation. However, eyewitness testimony is not without the potential for error. Even the most well-intentioned witness may identify the wrong individual or fail to identify the real offender. The justice system must be vigilant and guard against unintended suggestiveness in the eyewitness identification process.

(U) This policy guide does not mandate when any particular identification technique must be used; that decision is left to the sound judgment of the investigator, in consultation with his or her supervisor, CDC, and, when applicable, the assigned AUSA. Once a particular process is chosen, the steps outlined below must be followed.

1

UNCLASSIFIED//LES
(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

## 2.  (U) Roles and Responsibilities

### 2.1.    (U) Investigating Agents, FBI Police Officers, and All Others Gathering Eyewitness Identification Evidence

(U) All investigating agents, FBI police officers, and others involved in gathering eyewitness identification evidence must review and immediately implement the following procedures.

### 2.2.    (U) Supervisory Special Agents and All Others Supervising the Gathering of Eyewitness Identification Evidence

(U) All supervisory special agents and all others supervising the gathering of eyewitness identification evidence must ensure that their subordinates implement these procedures.

### 2.3.    (U) Chief Division Counsel (CDC)

(U) CDCs and when applicable, associate division counsels (ADCs), are responsible for providing assistance interpreting and implementing these procedures and should serve as the initial resource for field personnel with questions regarding these eyewitness identification procedures.

### 2.4.    (U) Office of the General Counsel (OGC)

(U) OGC is responsible for providing additional guidance to users of this policy implementation guide. CDCs should direct their questions about the eyewitness identification procedures to the deputy general counsel of the Investigative Law Branch.

UNCLASSIFIED//LES
(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

# 3.  (U) Policies and Procedures

(U) Although eyewitness identification techniques are basic law enforcement tools, these techniques raise constitutional and policy considerations. The cornerstone to those considerations–and the purpose of this policy guide–is to insure that all identifications are the product of the witness' unbiased, honest, accurate, and independent recollection so that the resulting identification is credible and admissible in court.

(U) This policy implementation guide outlines the procedures and considerations followed at the initial stages of an investigation, to facilitate the use and accuracy of eyewitness identification techniques, and to describe the procedures to be followed when using the following techniques: mug books; creation of composite images; the show-up; the live line-up; and the photographic line-up.

(U) When FBI personnel are working with state or local law enforcement to secure any type of eyewitness identification or when one cannot rule out a potential state prosecution, the FBI employee should consult with his or her CDC or OGC as each state jurisdiction has different requirements and procedures for eyewitness identification of subjects.

## 3.1.    (U) Initial Contacts and Interviewing Techniques–Basic Principles

(U) An investigator noting the initial description of an alleged perpetrator–whether during an emergency call or from a witness at the scene–should obtain as much detail as possible. This initial description is an essential part of any subsequent eyewitness identification. Information should be obtained by asking nonleading questions and should include as much information as possible regarding clothing and physical characteristics. The level of detail elicited from a witness can influence the accuracy of the information and affect the safety of all involved in the investigation.

### 3.1.1.    (U//LES) Obtaining Information from a Witness

(U//LES) How the first responder obtains information from a witness has a direct impact on the amount of information and its accuracy. Information obtained from a witness can corroborate other evidence (e.g., physical evidence, accounts provided by other witnesses) in the investigation. Written documentation of this information in the FD-302 must be prepared with FBI recordkeeping policy after receipt of the information.

### 3.1.2.    (U//LES) Follow-Up Interviews with a Witness

(U) When conducting the interview, the investigator should:

- (U//LES) Review all available witness and case information to achieve an effective and productive interview.

- (U) Conduct the interview as soon as the witness is physically and emotionally capable.

- (U) Select an environment that minimizes distractions while maintaining the witness' comfort level.

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

- (U) Ensure the proper resources are available (e.g., notepad, interview room, and, if the decision is made to record the interview, an appropriate recorder)

- (U) Interview each witness separately.

- (U) Determine whether the witness has had any prior law enforcement outside contact about the incident.

(U) Accordingly, investigators should make the witness comfortable to elicit the greatest amount of accurate information from the witness.

(U) Prior to beginning the interview, the investigator should:

- (U) Develop a rapport with the witness.

- (U) Not volunteer information about the suspect or the case.

(U) During the interview, the investigator should:

- (U) Encourage the witness to volunteer information without prompting.

- (U) Encourage the witness to report all details, even if they seem trivial.

- (U) Ask open-ended questions (e.g., "What can you tell me about the car?"), followed and augmented with closed-ended, specific questions, if necessary (e.g., "What color was the car?").

- (U) Avoid leading questions (e.g., "Was the car red?").

- (U) Caution the witness not to guess.

- (U) Ask the witness to mentally recreate the circumstances of the event (e.g., "Think about your feelings at the time," "Describe the event, or each event, in sequence if you can.").

- (U) Encourage nonverbal communication from the witness (e.g., drawings, gestures, objects).

- (U) Avoid interrupting the witness.

- (U) Encourage the witness to contact investigators when additional information is recalled.

- (U) Request that the witness not discuss details of the incident with other potential witnesses (in accordance with the law, the witness must never be instructed or ordered not to talk to potential witnesses or any other person).

- (U//LES) Request the witness avoid exposure to media accounts concerning the incident (in accordance with the law, the witness must never be instructed to not talk to the media or avoid exposure to media accounts concerning the incident).

### 3.1.3.    (U) Recording Witness Recollections

(U) The witness' statement detailing his or her recollections should accurately and completely reflect all material information provided. A record of the witness'

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

recollections preserves the integrity of the evidence and may serve to provide additional investigative leads.

(U) After the interview, the investigator must document the witness' interview in the appropriate FBI form as required by FBI policy and record that form in the case file in the central recordkeeping system and any other authorized and subsequent recordkeeping system.

**3.1.4.      (U) Assessing the Credibility of Individual Elements of a Witness' Statement**

(U) Point-by-point consideration of each component of a witness' statement assesses overall credibility. Information may be remembered independently of other elements and could assist in focusing an investigation and providing additional leads.

(U) After conducting the interview, the investigator should:

- (U) Consider each individual component of the witness' statement separately.
- (U) Review each element of the witness' statement in the context of the entire statement.
- (U) Look for inconsistencies within the statement.
- (U) Compare each element of the statement with the context of evidence known from other sources (e.g., other witnesses' statements, physical evidence, etc.).

**3.1.5.      (U) Maintaining Contact with the Witness**

(U) Establishing rapport with the witness and maintaining open communication may encourage the witness to provide additional information remembered after the initial interview. Routine follow-up contact with the witness may be critical to a successful investigation.

(U) During follow-up contact with the witness, the investigator should:

- (U) Reestablish rapport with the witness.
- (U) Ask the witness if he or she has recalled any additional information.
- (U) Follow the interviewing and documentation procedures in subsections 3.2.3., "Follow-up Interviews with a Witness," and 3.2.4., "Recording Witness Recollections."
- (U) Provide no information to the witness from other sources.

**3.2.      (U//LES) Decision to Use an Eyewitness Identification Technique**

(U//LES) While eyewitnesses can play a critical role in the administration of justice, eyewitness testimony is not without the potential for error. The most well-intentioned witness may identify the wrong individual.  Accordingly, investigators must carefully consider the use of eyewitness identification techniques. Factors to consider when employing any eyewitness identification technique include the following.

5

UNCLASSIFIED//LES

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

- (U//LES) Other evidence: If the government already possesses a significant amount of other investigative information, such as a confession and physical evidence clearly linking the suspect to the crime, eyewitness identification may be unnecessary. This is especially true when the eyewitness' recollection is weak.

- (U//LES) Unusual appearance of suspect: If the suspect's appearance is uncommon or unusual, and the investigator expects difficulty in locating suitable fillers (either photographs for a photo lineup or actually people as fillers for a live line-up).

- (U//LES) If the witness is well-acquainted with the suspect and recognized him or her during the offense.

- (U//LES) Uncooperative suspect: it may be unwise to hold a show-up or live line-up if the suspect threatens disruptive tactics (see subsection 3.7.9., "Refusal to Participate").

- (U//LES) Consultation with the CDC, ADC, or AUSA: If there is a question about the necessity of attempting an eyewitness identification technique, the investigator should seek the advice of the CDC, ADC, OGC, or AUSA.

### 3.3.    (U) Mug Books

### 3.3.1.    (U) Use of Mug Books

(U) Mug books are collections of photographs of previously arrested persons that may be used in cases in which a suspect has yet to be identified by law enforcement. Mug books are maintained by certain investigative programs (e.g., bank robbery coordinators), or by state and local law enforcement agencies. Use of a mug book may enable the witness to provide a lead in a case in which no suspect has been determined and other reliable sources have been exhausted.

(U) Mug books must be objectively compiled to yield admissible results. Therefore, in selecting photos preserved in a mug book, or when using mug books prepared by other agencies, the investigator should consider the following.

(U) Group the photos by format (e.g., size; lighting; color or black and white; 35mm or digital; video) to ensure that no photo unduly stands out.

- (U) Consider grouping the photos by specific crime (e.g., sexual assault, gang activity).

- (U) Ensure that positive identifying information exists for all individuals portrayed.

- (U) Ensure that the photos are reasonably recent.

- (U) Ensure that only one photo of each individual is in the mug book.

- (U) Each witness must be instructed and shown the mug book separately.

- (U) Describe the mug book to the witness only as a "collection of photographs."

**UNCLASSIFIED//LES**
(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

- (U) Consider suggesting that the witness think back to the event and recall where he or she was and what he or she was thinking at the time the event.

### 3.3.2.    (U) Instructing the Witness

(U) Prior to presenting the mug book, the investigator should provide the witness the following instructions. These instructions are designed to facilitate an accurate identification and to ensure that the witness understands that the purpose of the procedure is to exculpate the innocent as well as to identify the guilty.

- (U) The witness will be asked to view photographs of a number of individuals from a collection of photographs.

- (U) Individuals present in the collection of photographs may or may not appear exactly as they did on the date of the incident, because features such as head and facial hair are subject to change for all individuals, whether it is the suspect or not.

- (U) The person who committed the crime may or may not be in the collection of photographs.

- (U) There is no significance in the order of photographs the witness is seeing.

- (U) Whether or not the witness identifies a photograph as the perpetrator, law enforcement will continue to investigate the case.

- (U) The witness need not pick anyone or be certain if he or she does pick someone. If the witness makes an identification, the investigator will ask how certain he or she is of the identification.

### 3.3.3.    (U) Documenting the Procedure

(U) Thorough and accurate documentation of the use and results of a mug book is an important component in the investigative record and any subsequent court proceedings. The investigator conducting the procedure must preserve the results in the appropriate FBI form consistent with FBI policy governing documentation of information and record that form in the case file in the central recordkeeping system and any other authorized and subsequent recordkeeping system. The investigator must accurately document the preparation and source of the mug book, the instructions given to the witness, and whether an identification was made. If an identification is made, the investigator must make a copy of the photograph identified by the witness from the mug book, and document the witness' conclusions and statements relating to his or her level of certainty of the identification.

### 3.4.    (U) Composite Images

### 3.4.1.    (U) Developing and Using Composite Images

(U) A composite image is a drawing, sketch, or image created based upon a witness' description. Composite images (e.g., identikit-type, artist, or computer-generated images) can be beneficial investigative tools. Composite images should not be used as standalone

7
**UNCLASSIFIED//LES**

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

evidence, which would make it unlikely for them to serve as probable cause to support a warrant.

(U) The person preparing the composite image should select and employ the technique which best serves to depict accurately the witness' description. The person preparing the composite image should:

- (U) Assess the ability of the witness to provide a description of the perpetrator.
- (U) Select the most appropriate procedure to be used from those available (e.g., identikit-type, artist, computer-generated images, etc.).
- (U) Avoid showing the witness any photos prior to the development of the composite.
- (U) Select an environment for conducting the procedure that minimizes distractions.
- (U) Conduct the procedure separately with each witness.
- (U) Allow the witness the opportunity to review the image upon completion and determine whether the composite image is a reasonable representation of the perpetrator.

### 3.4.2.    (U) Instructing the Witness

(U) Before preparing a composite image, the person conducting the procedure should follow these instructions:

- (U) Each witness should be instructed separately.
- (U) Explain the type of composite image technique to be used.
- (U) Consider suggesting that the witness think back to the event and recall his or her frame of mind at the time.

### 3.4.3.    (U) Documenting the Procedure

(U) Thorough and accurate documentation of the use of a composite image is an important component in the investigative record and any subsequent court proceedings. The person conducting the procedure must preserve the results in an FD-302 which accurately documents the preparation of the composite image, the instructions given to the witness, and the witness' conclusions, including the witness' level of certainty of any identification .The form should be placed in the case file in the central recordkeeping system and any other authorized and subsequent recordkeeping system. The investigator must also document and preserve all composite images shown to the witness in the case file.

### 3.5.    (U) Field Identification Procedures (Show-Ups)

(U) A show-up is an identification procedure in which the witness is brought to view a potential suspect to determine whether the suspect is actually the perpetrator. Generally

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

only one potential suspect is shown to the witness, and the show-up is usually conducted shortly after the crime occurs.

(U) Show-ups are generally regarded as one of the most suggestive identification techniques because there is only one potential candidate for the witness to identify or exclude as the perpetrator. For this reason, the use of this technique must be carefully assessed, as discussed below.

### 3.5.1. (U) Use of the Procedure

(U) If a suspect is arrested or placed in temporary detention shortly after the commission of an offense and in the general area of the offense, the suspect may be confronted by witnesses individually for identification purposes. The phrase "shortly after the commission of an offense," as used in this section, means either within two hours, unless special circumstances warrant an extension or local practice or court rules require a reduction. In arrest situations, a formal line-up is strongly preferable over a single suspect confrontation. If staging a line-up will cause a substantial delay in the identification process or is impracticable under the circumstances, investigators can consider the use of a show-up. However, show-ups are subject to being challenged as unduly suggestive; therefore, show-ups should only be used when the witness has a prior relationship the suspect. FBI employees should consult with their CDC or OGC before using a show-up in any other circumstance.

### 3.5.2. (U) Conducting Show-Ups

(U) Because show-ups are inherently suggestive, investigators must take all reasonable steps to assure that confrontations between suspects and eyewitnesses are accomplished as fairly as possible. Some procedures that may reduce suggestiveness are outlined below. Circumstances surrounding single suspect show-ups will vary.

- (U) Circumstances of viewing: Investigators may be able to arrange the circumstances of the viewing to reduce suggestiveness. For example, the suspect may be positioned with several agents or law enforcement officers dressed in plain clothes or may exchange articles of clothing with the agents.

- (U) Instructing the witness: Investigators should instruct the witness that it is just as important to clear innocent persons from suspicion as to identify guilty parties, and whether the witness identifies the individual as the perpetrator, law enforcement will continue to investigate the incident.

- (U) Informing witness of status of investigation: Investigators should avoid telling witnesses about the status of the investigation or the details of the apprehension of the suspect. For example, investigators should not inform the witness that the suspect was stopped in a stolen car, that he or she possessed a weapon or fruits of the crime, or that he or she admitted participating in the offense. The witness merely should be informed that a person, who may or may not fit the description of the suspect, has been detained for investigation.

- (U) Nonleading questioning of witnesses: Investigators should phrase questions to avoid suggesting that the person has been arrested or is the perpetrator of the

9
**UNCLASSIFIED//LES**

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

crime. (e.g., investigators should ask: "Is this the person?" not "This is the person, isn't it?").

- (U) Commenting on validity of identification: Investigators should not comment on the validity of an identification made by a witness during a show-up.

### 3.5.3.    (U) Place of Confrontation

(U) After arrest: If a suspect found in the general vicinity of a crime is arrested, the show-up may take place either at the place of arrest, the scene of the crime, or any other appropriate place. Consent from the arrested suspect is not required to remove him or her from the arrest site to another location for viewing.

(U) During temporary detention: If a person found in the general vicinity of a crime is placed in temporary detention (i.e., Terry stop), the show-up must take place at the location of the stop, unless circumstances such as inclement weather or a hostile crowd inhibit movement in order to address those circumstances, as opposed to furthering the investigation. Thus, this may require transporting the witnesses to the scene of the detention. Unless the suspect voluntarily consents, the suspect should not be transported to the scene of the crime or to another location for viewing. Movement of the detained suspect may turn an otherwise valid temporary detention into an unlawful arrest (if probable cause to arrest is lacking). If the identification is determined to be the fruit of an unlawful arrest (i.e., a seizure), it is subject to suppression.

### 3.5.4.    (U) Multiple Witnesses

(U) If there are several witnesses to the crime, investigators should have the witnesses separately view the suspect. If the suspect is taken into custody, a line-up may be arranged for the witnesses who did not view the suspect in the show-up.

### 3.5.5.    (U) Right to Counsel

(U) A suspect or arrestee who appears in a show-up has no right to be represented by counsel at the show-up. It is unnecessary for any suspect to complete a FD-404, "Your Rights at a Line-up," prior to appearance in the show-up.

### 3.5.6.    (U) Recording Show-up Results

(U) The investigator must preserve the outcome of the show-up procedure by accurately and completely documenting all identification or nonidentification results obtained from the witness. Thorough documentation improves the strength and credibility of the results; therefore, when conducting a show-up, the investigator must:

- (U) Document the circumstances surrounding the show-up procedure, including time and location, number of law enforcement officers present, and instructions provided to the witness(es).

- (U) For each witness, document a statement regarding the degree of certainty for both identification and nonidentification results.

(U) Documentation must be created or imported into the case file in the central recordkeeping system or any other authorized and subsequent recordkeeping system.

10
**UNCLASSIFIED//LES**

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

### 3.6.     (U) Live Line Ups

(U) All FBI live line-ups must be conducted in a manner that promotes the reliability, fairness, and objectivity of the witness' identification. The investigator or administrating agent (hereafter the term "investigator" will be used whether it is the lead investigator or another agent that administers the line-up) must conduct the live line-up in a nonsuggestive manner conducive to obtaining accurate identification or nonidentification results based on the witness' memory, while minimizing the effect of outside influences. The investigator should comply with the procedures described below. The primary objectives of these procedures are to eliminate suggestiveness and make certain that nothing is done or said by the investigator to distinguish the suspect from other participants in the line-up in order to ensure accurate and reliable identifications.

### 3.6.1.     (U) Sequential Administration of Live Line-Ups

(U) Unless investigative needs dictate otherwise, all FBI live line-ups should be conducted in a sequential manner. A sequential live line-up is one in which individuals (suspect and fillers) are presented to the witness one at a time, as opposed to simultaneously.

### 3.6.2.     (U//LES) Composing Live Line-Ups

(U//LES) The fair, nonsuggestive composition of a live line-up enables the witness to provide a more accurate identification or nonidentification. When composing a live line-up, the investigator should follow the procedures below to prevent the suspect from appearing obvious:

- (U//LES) Include only one suspect in each live line-up identification procedure.
- (U//LES) Select fillers who generally fit the witness' description of the perpetrator. If the witness has provided a limited or inadequate description of the perpetrator, or if the description of the perpetrator differs significantly from the appearance of the suspect, fillers must resemble the suspect's significant features.
- (U//LES) If there are multiple witnesses in the same case, the investigator should present the suspect in a different order in each live line-up. Position the suspect randomly unless, where local practice allows, the suspect's attorney requests a particular order.
- (U//LES) Include a minimum of five fillers (nonsuspects) per identification procedure.
- (U//LES) Do not use fillers previously shown to the same witness when showing new suspects.
- (U//LES) Identify any unique or unusual features (e.g., scars, tattoos, etc.) and create a consistent appearance between the suspect and fillers by artificially adding or concealing the particular feature(s).
- (U//LES) Persons known to the witness must not be used as fillers in the line-up

11
**UNCLASSIFIED//LES**

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

- (U//LES) The line-up suspect may be compelled to wear distinctive clothing. All other participants must wear similar attire or don the suspect's clothing.

- (U//LES) The suspect may be compelled to speak for voice identification if all other participants are required to state the same words or phrases. None of the line-up participants, including the suspect, should be required to identify himself individually when being viewed by the witness.

- (U//LES) The suspect can be compelled to make certain gestures or assume particular poses if all other line-up participants are required to do the same.

### 3.6.3.    (U) Instructing the Witness Prior to Viewing a Live Line-Up

(U) Prior to presenting the live line-up, the investigator should provide the witness the following instructions. These instructions are designed to facilitate an accurate identification and to ensure that the witness understands that the purpose of the procedure is to exculpate the innocent, as well as to identify the guilty.

- (U) The witness will be asked to view a number of individuals.

- (U) It is just as important to clear innocent persons from suspicion as to identify guilty parties.

- (U) Individuals present in the line-up may not appear exactly as they did on the date of the incident because features such as head and facial hair are subject to change, for all individuals, whether it is the suspect or not.

- (U) The person who committed the crime may or may not be present among the individuals seen.

- (U) Individuals will be viewed one at a time. There is no significance in the order of persons the witness sees.

- (U) Take as much time as needed to make a decision about each individual before asking to see the next person.

- (U) If the witness sees the perpetrator of the crime, advise the investigator at that time. The investigator will continue presenting the remaining individuals, however. If the witness sees a subsequent individual in the line-up that makes the witness reconsider your prior identification, advise the investigator at that time. After the witness has seen all the individuals, the witness can request to see an individual again.

- (U) Tell the witness that whether or not he or she identifies an individual as the perpetrator, law enforcement will continue to investigate the incident.

- (U) The witness need not identify anyone or be certain if he or she does identify someone.

- (U) If the witness makes an identification, the investigator will ask the witness how certain he or she is of the identification.

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

**3.6.4.    (U//LES) Sequential Live Line-up Identification Procedures**

(U) The following are instructions for administrating a sequential live line-up. The investigator responsible for the line-up should:

- (U//LES) Provide viewing instructions to the witness as described in subsection 3.7.1.3., "Instructing the Witness Prior to Viewing a Line-up."

- (U//LES) Begin the procedure with all line-up participants out of the witness' view.

- (U//LES) Instruct all those present not to suggest in any way the identity of the suspect in the line-up.

- (U//LES) Present each individual to the witness separately, in a previously determined order.

- (U//LES) Do not present the suspect as the first person to be viewed.

- (U//LES) Ensure that any identifying actions (e.g., speaking, moving) are performed by all members of the line-up.

- (U//LES) Say nothing that may influence the witness' selection.

- (U//LES) If the witness identifies a suspect, do not provide the witness any information regarding the individual he or she has selected before or after obtaining the witness' written statement of certainty.

- (U//LES) Record any identification results and witness' statement of certainty as outlined in subsection 3.7.1.5, "Recording Identification Results."

- (U//LES) Document the live line-up procedures and content in writing, including:
  - (U//LES) Identification information of live line-up participants.
  - (U//LES) Names of all persons present at the live line-up.
  - (U//LES) Date and time the identification procedure was conducted.

- (U//LES) Document the line-up by photo or video. This documentation must represent the live line-up clearly and fairly. Photo documentation can be of either the group or each individual. Frontal and profile photographs of the line-up participants should be taken and preserved in the case file for possible use as evidence in the event the fairness or suggestiveness of the line-up is challenged.

- (U//LES) Request the witness not to discuss the identification procedure or its results with other witnesses involved in the case and request that the witness not have contact with the media.

- (U//LES) Multiple witnesses must not view the line-up together.

- (U//LES) In the event of a positive identification, the witness must be asked to provide and sign a statement articulating the reasons he or she identified the person.

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

### 3.6.5.    (U) Recording Identification Results

(U) The investigator must prepare a complete and accurate report (FD-302) detailing how and where the line-up was held. As noted in section 3.7.1.4(1)., the report should include the names and addresses (jail or otherwise) of all line-up participants. Any suggestions or objections made by the defense attorney should be noted in the report. Other investigators assisting in the line-up should ensure their role is described in the report or should prepare a separate report. Thorough documentation improves the strength and credibility of the results critical to the investigation. In documenting the line-up, the investigator should:

- (U) Record both identification and nonidentification results in writing, including any witness' statement regarding his or her degree of certainty.
- (U) Ensure results are signed and dated by the witness.
- (U) Ensure that the witness does not write on or mark any materials that will be used in other identification procedures.

(U) Documentation must be created or imported into the case file in the central recordkeeping system and any other authorized and subsequent recordkeeping system.

### 3.7.    (U) Notice to AUSA and Defense Counsel

(U) Once a live line-up has been scheduled, the investigator must advise the AUSA and defense counsel, if applicable (see below), of the time and place of the live line-up

### 3.7.1.    (U) Defense Objections to Proposed Line-ups

(U) If defense counsel raises objections or in any other manner obstructs the proposed live line-up, defense counsel must be advised to discuss the matter with the AUSA.

### 3.7.2.    (U) Right to Counsel

(U) The suspect has a constitutional right to have a lawyer present at a live line-up only if the live line-up occurs after the Sixth Amendment right to counsel has attached (i.e., after an initial appearance before a magistrate judge or initiation of formal prosecution by the filing of an indictment or information), and the live line-up is concerning the offense for which the right to counsel has attached. The following provides guidance concerning the presence of counsel before the constitutional right has attached as well once the right to counsel has attached.

### 3.7.2.1.    (U) Live Line-ups Prior to Arrest or Initiation of Prosecution

(U) If a suspect voluntarily appears in a live line-up before the right to counsel has attached or is compelled to appear pursuant to a court order or grand jury subpoena (see 3.7.10., "Detention of Suspects for Line-ups"), the suspect must be informed that he or she may retain counsel for the live line-up but that the suspect has no legal right to counsel and none will be appointed. The suspect must be informed sufficiently before the live line-up to enable him or her to secure the services of an attorney at the suspect's own expense. If the suspect does not retain counsel, it is not necessary to obtain a waiver or

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

execute Form FD-404, "Your Rights at a Line-up." The live line-up may be held without the presence of a defense attorney.

(U) Unrelated offenses: Even after the initiation of criminal charges, a suspect does not have the right to counsel at a live line-up if it relates to other criminal offenses for which the defendant has not been charged. For example, if a suspect is arrested and charged with theft from interstate shipment, but the FBI subsequently develops information that he or she is a suspect in a bank robbery, the suspect would have no legal right to be represented by counsel at a line-up held for witnesses of the bank robbery. This rule applies whether the suspect is in custody or has been released on bond. If such a live line-up is considered, the suspect must be informed well in advance of the line-up that he or she has no legal right to an attorney at the line-up, and one will not be appointed to represent the suspect. If the suspect is already represented by retained or appointed counsel, or desires to hire an attorney, he or she must be permitted to do so and have the attorney at the live line-up to represent him. If the suspect does not retain counsel, the line-up may proceed without the presence of the suspect's lawyer. In that event, it is not necessary to obtain a waiver or execute Form FD-404. (See subsection 3.7.5., "Waiver of Counsel.")

(U) Same offense: A suspect has the right to a lawyer for any live line-up in connection with the offense for which he or she has been arrested and has made his or her initial appearance or been formally charged with an indictment or information. If he or she cannot afford counsel, the suspect has the right to have a lawyer appointed. A live line-up must not be conducted under this section if the suspect is not represented by counsel or refuses to execute a waiver of counsel pursuant to subsection 3.7.5.

### 3.7.3.    (U) Waiver of Counsel

(U) Live line-ups after arrest and initial appearance or formal charge: If the defendant has no counsel at the time of the live line-up, or the counsel has not appeared, the defendant must be asked if he or she is willing to appear in the line-up without the benefit of counsel. If he is willing, he should be requested to waive counsel by signing the FD-404. If he is unwilling to waive the presence of counsel, the line-up may not proceed until counsel is present. (See subsection 3.7.6., "Substitute Counsel.")

(U) Execution of FD-404: All sections in the FD-404 should be completed to show the place (city and state) of the live line-up, the date, and the time the form was furnished to the suspect. The form should be signed by the suspect and two witnesses (preferably special agents) and the time should be noted. Documentation must be created or imported into the case file in the central recordkeeping system and any other authorized and subsequent recordkeeping system.

(U) Refusal to sign form: If the suspect is willing to appear without counsel, but refuses to sign the form, the suspect's words should be written in the appropriate section below the "waiver and consent" paragraph on the form. Witnesses must then sign the form and note the time. Documentation must be created or imported into the case file in the central recordkeeping system and any other authorized and subsequent recordkeeping system.

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

(U) Voluntariness of waiver: To be valid, the waiver must be voluntary and not the product of coercion or duress. For example, the investigator may not represent to the individual that if he or she agrees to conduct the line-up without counsel present, this will benefit the suspect in the future as it will appear that he or she is more cooperative with the government.

### 3.7.4.    (U) Substitute Counsel

(U) If the suspect is entitled to an attorney, but is not currently represented by counsel and refuses to waive counsel, the AUSA must be asked to request the court to appoint counsel for purposes of the live line-up. The live line-up may not be conducted if the right to counsel has attached, the suspect is not represented by counsel, and the suspect refuses to waive the presence of counsel.

### 3.7.5.    (U) Role of Defense Counsel

(U) A defense attorney should be observer only at a live line-up. His or her presence is required to ensure intelligent cross-examination of the line-up witnesses at trial and to detect anything that might affect the admissibility of testimony about the line-up.

(U) Lawyer's suggestions: Before the lineup, the defense lawyer should be permitted to make suggestions concerning the procedure for the proposed live line-up. The investigator should attempt to incorporate any reasonable suggestion which promotes the fairness of the line-up. All suggestions, whether or not adopted, should be noted by the investigator and included in the FD-302. The FD-302 must be created or imported into the case file in the central recordkeeping system and any other authorized and subsequent recordkeeping system.

(U) Participation during the live line-up: The attorney must be instructed not to converse with the line-up participants, witnesses, or investigator during the line-up. Any attempts to disrupt the line-up must be noted by the investigator on his or her FD-302. If the attorney for the defendant obstructs the identification, he or she may be excluded from the line-up room. In the event a defense attorney is excluded, the AUSA must be contacted before resuming the line-up.

(U) The investigator should explain to the defense attorney the process that will be used including the fact all line-up participants will be shown even if the witness makes an identification.

(U) Presence at moment of identification: The witness must make any identification in the line-up room when the line-up participant is still visible. Defense counsel must be present and in a position to observe the identification. The attorney must not be allowed to communicate with the witness or participate in the identification process.

(U) Presence after line-up interview of witness: The right to counsel does not extend to interviews with line-up witnesses after the conclusion of the line-up. The suspect's lawyer should not be included in the post-line-up interviews of line-up witnesses.

(U) Contact with government witnesses after completion of line-up: The line-up witness should be told after the line-up is over that he or she may speak with the defense attorney if he or she wishes but that the witness is under no legal obligation to do so. The witness'

16

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

name and address must not be revealed to the defense lawyer without the consent of the witness.

### 3.7.6.    (U) Live Line-ups Conducted by Local Authorities

(U) In some instances, it may be necessary to use local facilities and personnel to conduct a live line-up. In that event, efforts should be taken to ensure that the procedures used by the local authorities substantially conform to the procedures outlined in this policy guide.

### 3.7.7.    (U) Refusal to Participate

(U) A suspect in custody who does not have a Sixth Amendment right to counsel (see section 3.7.4.) has no right to refuse to participate in a live line-up. If a suspect refuses to participate or refuses to perform acts required in the line-up, he or she must be informed that he or she has no right to refuse. The defendant may be informed that evidence of his refusal might be used against him or her at trial. If the suspect continues to refuse, investigators should consider asking the AUSA to obtain a court order to compel participation or foregoing a live line-up and instead employing photographic identification procedures.

### 3.7.8.    (U) Detention of Suspects for Live Line-ups

(U) When there is no probable cause to arrest or when an arrest is not desirable, there are two ways to compel the suspect to appear in a live line-up:

- (U) Court order: Upon approval of the AUSA, an order may be sought to compel the suspect to appear at a designated place and time for a live line-up. An affidavit supporting such a motion must contain facts establishing that a federal offense has been committed, that there is reason to suspect that the person named or described in the affidavit committed the offense, and that the results of the live line-up will materially assist the government in determining whether the person compelled to participate in the line-up committed the offense.

- (U) Grand jury subpoena: The AUSA may issue a federal grand jury subpoena directing the suspect to appear at a live line-up at a designated time and place.

### 3.8.    (U) Photographic Line-ups (Photographic Arrays)

(U) Photographic line-ups must be conducted to promote the reliability, fairness, and objectivity of the witness' identification. When deciding whether to conduct a photographic lineup, the investigator must consider whether the witness has provided a description of a suspect and must document the description provided. See subsection 3.1.3. The investigator (or administering agent if not the lead investigator) must conduct the photographic line-up in a nonsuggestive manner conducive to obtaining accurate identification or nonidentification results based on the witness' memory, while minimizing the effect of outside influences. The investigator must comply with the procedures discussed below. The primary objectives of these procedures are to minimize suggestiveness by ensuring that nothing is done or said by the FBI to distinguish the suspect's photograph from other photographs in the line-up and to ensure reliability of any identification.

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

### 3.8.1.    (U) Sequential Administration of Photographic Line-ups

(U) Unless investigative needs dictate otherwise, all FBI photographic line-ups must be conducted in a sequential manner. A sequential photographic line-up is one in which photos are presented to the witness one at a time as opposed to simultaneously.

### 3.8.2.    (U) Composing a Photographic Line-up

(U) When composing a photographic line-up, the investigator should:

- (U) Include only one suspect in each photographic line-up and not present the suspect as the first person to be viewed.

- (U) If multiple photos of the suspect are available, the case agent should select the photograph that most resembles the description of the suspect given by witnesses.

- (U) Include a minimum of five fillers (for a total of six photographs) per photographic line-up identification procedure. There must be a reasonable attempt to use photographs of other persons who resemble the suspect. The photo print itself should not be dissimilar to other prints. If the witness provides a limited or inadequate description of the perpetrator or if the description of the perpetrator differs significantly from the appearance of the suspect in the photographic line-up, the fillers must resemble the suspect in his or her significant features.

- (U) When considering unique or unusual features (e.g., scars, tattoos), create a consistent appearance between the suspect and fillers by artificially adding or concealing that particular feature(s).

- (U) Attempt to locate and utilize photographs which do not indicate the persons depicted have engaged in criminal misconduct. Where feasible, photographs without number boards or other indications of criminality should be used. If a mug shot is the only photograph of the suspect that is available, the number board must be covered or masked and similar masking must be used for all filler photographs.

- (U) Ensure that no writings or information concerning previous arrest(s) will be visible to the witness.

- (U) When showing a new suspect, fillers from prior photographic line-ups shown to the same witness may not be reused.

### 3.8.3.    (U) Instructing the Witness Prior to Viewing a Photographic Line-up

(U) Before presenting the photographic line-up, the investigator should provide the witness the following instructions. These instructions are designed to facilitate an accurate identification and to ensure that the witness understands that the purpose of the procedure is to exculpate the innocent as well as to identify the guilty.

- (U) The witness will be asked to view a series of photographs.

18
**UNCLASSIFIED//LES**

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

- (U) It is just as important to clear innocent persons from suspicion as it is to identify guilty persons.

- (U) Individuals depicted in the photographs may not appear exactly as they did on the date of the incident because features such as head and facial hair are subject to change.

- (U) A photograph of the person who committed the crime may or may not be among the photographs being presented.

- (U) If the witness sees a photograph of the perpetrator, tell the investigator. The investigator will continue showing the witness the remaining pictures. If the witness sees a subsequent picture that makes the witness reconsider a prior identification, tell the investigator. After the witness has seen all the photographs, if the witness wants to see one or more photographs again, the investigator will show them again.

- (U) Whether or not the witness identifies a photograph as the perpetrator, law enforcement will continue to investigate the incident.

- (U) The witness need not pick anyone or be certain if he or she does pick someone. If the witness make an identification, the investigator will ask how certain the witness is of the identification.

**3.8.4.    (U) Sequential Photographic Line-up Identification Procedures**

(U) The display of photographs must not be impermissibly suggestive. Therefore, when presenting a sequential photographic line-up, the investigator should:

- (U) Provide the instructions to the witness as outlined in subsection 3.8.1.3., "Instructing the Witness Prior to Viewing a Photographic Line-up."

- (U) Confirm that the witness understands how the photographic line-up will be conducted.

- (U) Do not advise the witness how many photographs he or she will be asked to view.

- (U) Present each photo to the witness separately in the order determined in step one. After the witness has viewed a photograph, remove it from view before presenting the next photograph.

- (U) If the witness identifies a photograph, continue to show the witness the remaining photographs at the same pace as the other photographs. If, after seeing all of the photographs, the witness wishes to see again a particular photograph, show that photograph with other photographs out of view.

- (U) Record any identification results and the witness' statement of certainty as described in subsection 3.8.1.5., "Recording Identification Results."

- (U) Document in writing the photographic line-up procedures, including:

    o  (U) Identification information and sources of all photos used.

**UNCLASSIFIED//LES**
(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

- o (U) The order in which the photographs were shown to the witness and whether any photograph was shown to the witness more than once (and if so, indicated which photos).

- o (U) Names of all persons present at the photographic line-up.

- o (U) Date, time, and place of the photographic line-up identification procedure.

- (U) Ask that the witness not discuss the photographic line-up identification procedure, or its results, with any other witness involved in the case and request the witness not have contact with the media.

- (U) Multiple witnesses must not view the photographic lineup together and the investigator must request that the witnesses avoid discussing details of the incident with other potential witnesses.

- (U) In the event of a positive identification during the photographic line-up, the witness should be asked to provide and sign a statement articulating the reasons he or she identified the person.

### 3.9.    (U) Recording Identification Results

(U) The investigator must preserve the outcome of the photographic line-up by accurately and completely recording any identification or nonidentification results obtained from the witness. A complete record of the procedure can be a critical document in the investigation and in subsequent court proceedings.

(U) As noted in section 3.8.1.4.(6), the investigator must prepare a FD-302 reflecting how and where the photographic line-up was held. The report must also include the names of all photographic line-up participants. Other investigators assisting in the line-up must prepare reports describing their roles in the line-up. In documenting the line-up, the investigator must:

- (U) Ensure that no materials indicating previous identification results can be seen by the witness.

- (U) Record both identification and nonidentification results in writing, including the witness' statement regarding his or her degree of certainty.

- (U) Ensure results are signed and dated by the witness.

- (U) Ensure that the witness does not write on or mark any materials that will be used in other identification procedures.

(U) Documentation must be created or imported into the case file in the central recordkeeping system and any other authorized and subsequent recordkeeping system.

### 3.10.    (U) Retention of Photographs

(U) All photographs shown to witnesses for the purpose of identifying the suspect, whether or not an identification was made, must be specifically identified and remain under the control of the field office or made recoverable so that they can be produced if

UNCLASSIFIED//LES

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

necessary. The photographs must be imported into the case file in an 1A envelope and a physical copy must be maintained in an 1A envelope in a paper case file. In addition, the presentation order of the photographic line-up must be recorded and preserved.

**3.11.   (U) Right to Counsel**

(U) A suspect does not have the right to have his or her attorney present at a photographic line-up, whether the line-up is before or after arrest or the filing of a formal charge by an indictment or information.

**UNCLASSIFIED//LES**

(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

## Appendix A: (U) Contact Information

| | |
|---|---|
| Office of the General Counsel | J. Edgar Hoover Building |
| Investigative Law and Training Section | 935 Pennsylvania Avenue, NW |
| Legal Instruction Unit | Washington, DC 20535 |
| FBI Headquarters | |

UNCLASSIFIED//LES
(U) Procedures for Eyewitness Identification of Suspects Policy Implementation Guide

## Appendix B: (U) Key Words and Acronyms

| | |
|---|---|
| AD | assistant director |
| ADC | associate division counsel |
| ASAC | assistant special agent in charge |
| AUSA | assistant United States attorney |
| CDC | chief division counsel |
| CFR | Code of Federal Regulations |
| CID | Criminal Investigative Division |
| FBI | Federal Bureau of Investigation |
| FBIHQ | Federal Bureau of Investigation  Headquarters |
| LEGAT | legal attaché |
| OIC | Office of Integrity and Compliance |
| OGC | Office of the General Counsel |
| ODNI | Office of the Director of National Intelligence |
| SA | special agent |
| SAC | special agent in charge |
| SWAT | Special Weapons and Tactics |
| U.S.C. | United States Code |
| USPER | United States person |