

John B. McEntire, IV
*Senior Litigator*
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for James D. Cloud

United States District Court
Eastern District of Washington
Honorable Mary K. Dimke

| | |
|---|---|
| United States of America, | No. 1:19-CR-2032-SMJ-1 |
| Plaintiff, | Renewed Motion to Enter Due Process Protection Act Order |
| v. | |
| James Dean Cloud, | November 23, 2020 – 2:30 p.m. |
| Defendant. | Yakima – With Argument |

## I.     Introduction

On October 21, 2020, the Due Process Protections Act was signed into law, requiring judges to issue oral and written orders confirming not only a prosecutor's disclosure obligations under *Brady*[1] and its progeny, but also the consequences for violating those obligations. *See* Fed. R. Crim. P. 5(f) (2020); Pub. L. No. 116-182 (2020). Because the Act "became effective upon enactment," the Administrative Office of the U.S. Courts advised that "all judges must immediately comply with this new requirement. . . ."[2]

In response to the DPPA, James Cloud filed a Motion to Enter Due Process Protection Act Order on October 29,[3] but the district court denied it on November 2, finding "[t]he Act does not apply retroactively to all criminal proceedings instituted before its date of enactment."[4]

On November 17, a grand jury returned a Third Superseding Indictment,[5] triggering an arraignment at 2:30 p.m. on November 23 before the Court.[6] Because this arraignment brings all the parties together to review the new charges, this seems

---

[1] *See Brady v. Maryland*, 373 U.S. 83 (1963).
[2] *See* October 26, 2020 Memorandum from James C. Duff to all United States Judges at Page 2, attached as Exhibit A.
[3] ECF No. 227 (James Cloud's DPPA Motion).
[4] ECF No. 229 (Text Order).
[5] ECF No. 242 (Third Superseding Indictment).
[6] ECF No. 247 (Notice of Hearing).

Renewed DPPA Motion
– 1 –

an appropriate venue for the Court to issue both written and oral *Brady* warnings, as the DPPA requires.

There are several reasons this motion is properly before the Court:

***First***, this is not a closed case; this is not a post-plea case; this is a live, pretrial case returning to the Court for initial proceedings (an arraignment on new charges), which is when Congress envisioned judges would remind prosecutors about their *Brady* obligations.

***Second***, traditional retroactivity concerns aren't present. The DPPA doesn't involve criminal punishments, so the Ex Post Factor Clause isn't implicated. *See Johannessen v. U.S.*, 225 U.S. 227, 242 (1912) (noting the Ex Post Facto Clause's "prohibition is confined to laws respecting criminal punishments, and has no relation to retrospective legislation of any other description.").

The DPPA also doesn't announce new rules, as Congress made clear the DPPA simply "reinforce[s] the government's already existing constitutional obligation to disclose exculpatory evidence." *See* Congressional Proceedings, 166 Cong. Rec. H4582-01, 2020 WL 5641902 (Sep. 21, 2020).

***Third***, entering a DPPA order follows Congressional intent. During floor debate, the DPPA's sponsor stated the bill would do "three very vital things," including amending the criminal procedural rules to "require that a judge issue an

order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutors in every criminal case. . . ." *Id.* Of the three vital things mentioned during debate, timing wasn't one of them. That is, Congress didn't so much care ***when*** courts issued *Brady* warnings (although it makes sense to do it at a case's outset, which is why the DPPA was filed under Rule 5); but Congress did care ***whether*** courts issued *Brady* warnings.

Turning to what the Court's DPPA order should contain, it helps to look at the Act's legislative history, Ninth Circuit authority, Supreme Court authority, and federal prosecutors' ethical obligations.

## II.   Discussion

**A.   Congress passed the Act to address ongoing *Brady* violations.**

The Act's provenance rests on a bipartisan belief that, despite well-settled case law requiring prosecutors to turn over favorable evidence, prosecutors continue to "conceal" exculpatory evidence. *See* Congressional Proceedings, 166 Cong. Rec. H4582-01, 2020 WL 5641902 (Sep. 21, 2020). To illustrate the point during floor debate, lawmakers described DOJ's high-profile failure to honor its constitutional obligations during then-Senator Ted Stevens's corruption trial, where prosecutors concealed exculpatory evidence, ultimately leading to dismissal. *Id.*

DOJ's misconduct wasn't a one-off: this has been a year of extraordinary *Brady* violations.

In August 2020, the Ninth Circuit addressed *Brady* violations in a high-profile case stemming from a stand-off between Cliven Bundy and the government over cattle-grazing rights. *See U.S. v. Bundy*, 968 F.3d 1019 (9th Cir. 2020). After trial began, allegations surfaced the United States withheld discovery central to Bundy's defense. The district court held several evidentiary hearings on the withheld discovery, ultimately finding the United States' "*Brady* violations were so egregious and prejudicial that the indictment needed to be dismissed with prejudice." *Id.* at 1030. The United States appealed, and the Ninth Circuit affirmed, finding "the government fell well short of its obligations to work toward fairly and faithfully dispensing justice rather than simply notching another win." *Id.* at 1041.

The month following the *Bundy* opinion, September 2020, the Honorable Alison Nathan addressed *Brady* violations in a high-profile fraud case. *See U.S. v. Nejad*, ___ F. Supp. 3d ___, 2020 WL 5549931 (S.D.N.Y. Sep. 16, 2020). Before, during, and after trial, the United States "made countless belated disclosures of arguably (and, in one instance, admittedly) exculpatory evidence." *Id.* at 1. The United States recognized its failures and agreed Judge Nathan should vacate Mr. Sadr's guilty verdict. *See id.*

What struck Judge Nathan wasn't the United States' willingness to dismiss the case, but rather the depth of the United States' bad-faith. During trial, the United States realized it failed to turn over exculpatory material, but "[i]nstead of immediately disclosing that file, Government lawyers spent almost twenty hours strategizing how best to turn it over," ultimately agreeing they should "'*bury* **the evidence** along with other, already-disclosed documents . . . ." *Id.* at 2 (emphasis added). This did not sit well with Judge Nathan, as she openly ruminated how best to sanction prosecutors for their admitted wrongdoing.

These two decisions (*Bundy* and *Nejad*), just a month apart, show Congress's concerns about prosecutors failing to disclose exculpatory material remain relevant.

**B.    Congress passed the Act to provide trial courts with disciplinary options.**

Lawmakers weren't just troubled by DOJ concealing evidence in then-Senator Ted Stevens's case; they were equally-troubled by district court's inability to sanction prosecutors for their misconduct. The inability to sanction, lawmakers noted, stemmed from the lack of a "direct written court order requiring [prosecutors] to abide by their ethical and constitutional obligations to disclose favorable evidence." Congressional Proceedings, 166 Cong. Rec. H4582-01, 2020 WL 5641902 (Sep. 21, 2020).

Finding the lack of a standing *Brady* order troubling, lawmakers surveyed federal judicial districts to determine how many employ standing *Brady* orders. *See id.* They uncovered a patchwork of protections, with only 38 of 94 Federal districts using local rules and standing orders to confirm prosecutors' *Brady* obligations. *See id.* This patchwork, lawmakers concluded, failed "to ensure that this practice is followed across the country." *Id.*

So they acted.

**C.    Congress wants substantive *Brady* orders, not rote reminders.**

Congress's changes to Rule 5's language are minor; its expectations on what *Brady* orders should contain are not. These heightened expectations surfaced during floor debate, when lawmakers called attention to the District of Columbia, which folded a *Brady* order into the local rules in the wake of the botched Stevens prosecution. The District of Columbia's local rule (LCrR 5.1) is no rote reminder; rather, it details the United States' disclosure obligations:[7]

---

[7] https://www.dcd.uscourts.gov/sites/dcd/files/LocalRulesJuly_2019.pdf, last accessed on October 29, 2020.

## LCrR 5.1

## DISCLOSURE OF INFORMATION

**(a)** Unless the parties otherwise agree and where not prohibited by law, the government shall disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and that is known to the government. This requirement applies regardless of whether the information would itself constitute admissible evidence. The information, furthermore, shall be produced in a reasonably usable form unless that is impracticable; in such a circumstance, it shall be made available to the defense for inspection and copying. Beginning at the defendant's arraignment and continuing throughout the criminal proceeding, the government shall make good-faith efforts to disclose such information to the defense as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case.

**(b)** The information to be disclosed under (a) includes, but is not limited to:

(1) Information that is inconsistent with or tends to negate the defendant's guilt as to any element, including identification, of the offense(s) with which the defendant is charged;

(2) Information that tends to mitigate the charged offense(s) or reduce the potential penalty;

(3) Information that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense(s) with which the defendant is charged;

(4) Information that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial; and

(5) Impeachment information, which includes but is not limited to: (i) information regarding whether any promise, reward, or inducement has been given by the government to any witness it anticipates calling in its case-in-chief; and (ii) information that identifies all pending criminal cases against, and all criminal convictions of, any such witness.

**(c)** As impeachment information described in (b)(5) and witness-credibility information described in (b)(4) are dependent on which witnesses the government intends to call at trial, this rule does not require the government to disclose such information before a trial date is set.

    **(d)**    In the event the government believes that a disclosure under this rule would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of the requirements of this rule, which may include *in camera* review and/or withholding or subjecting to a protective order all or part of the information.

    **(e)**    For purposes of this rule, the government includes federal, state, and local law-enforcement officers and other government officials who have participated in the investigation and prosecution of the offense(s) with which the defendant is charged. The government has an obligation to seek from these sources all information subject to disclosure under this Rule.

    **(f)**    The Court may set specific timelines for disclosure of any information encompassed by this rule.

    **(g)**    If the government fails to comply with this rule, the Court, in addition to ordering production of the information, may:

        (1) specify the terms and conditions of such production;
        (2) grant a continuance;
        (3) impose evidentiary sanctions; or
        (4) enter any other order that is just under the circumstances.

While the District of Columbia's Local Criminal Rule 5.1 is a solid benchmark, the Court's DPPA order here would need to be tweaked in a few ways:

***First***, it would need to unmoor itself from *Brady*'s definition of "materiality," which is an appellate standard. Time-and-time again, the Ninth Circuit has noted "the retrospective definition of materiality is appropriate only in the context of appellate review, and that trial prosecutors must disclose favorable information ***without*** attempting to predict whether its disclosure might affect the outcome of the trial." *U.S. v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013) (emphasis added).

Thus, prosecutors cannot attempt to later excuse *Brady* violations by claiming "I didn't know it was material."

***Second***, it would need to capture that prosecutors' disclosure obligations apply not only to trials, but also to pre-trial and sentencing hearings as well. *See*, *e.g.*, *U.S. v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (recognizing *Brady* applies to suppression hearings); *see also Edwards v. Ayers*, 542 F.3d 759, 768 (9th Cir. 2008) (recognizing *Brady* applies to sentencing hearings).

***Third***, it would need to capture that, under *Brady*, prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in [a] case, including the police." *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).

***Fourth***, it would need to expand prosecutors' disclosure obligations to harmonize with Washington's ethical rules. Federal prosecutors in the Eastern District of Washington are bound by Washington's rules of professional conduct. *See* 28 U.S.C. §530B(a) ("An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extend and in the same manner as other attorneys in that State."). Washington's RPC 3.8, which

outlines a prosecutor's "special responsibilities," requires prosecutors to disclose information above-and-beyond *Brady*:

### RPC 3.8
### SPECIAL RESPONSIBILITIES OF A PROSECUTOR

The prosecutor in a criminal case shall:

(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;

(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;

(c) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;

(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal;

With these tweaks in mind, James Cloud proposes the following language, which melds the District of Columbia's local rule with Ninth Circuit authority, Supreme Court authority, and Washington's RPCs:

### Disclosure of Information

Unless the parties agree and where not prohibited by law, the government shall timely disclose to the defense all evidence or information known to the government that tends to negate the guilt of the accused or mitigates the offense.

"Timely" means that, beginning at the defendant's arraignment and

continuing throughout the criminal proceeding, the government shall make good-faith efforts to disclose such information to the defense as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case.

These requirements apply regardless of whether the information would itself constitute admissible evidence. These requirements also apply to all court proceedings, including pretrial hearings, trial, and sentencing.

The information, furthermore, shall be produced in a reasonably usable form unless that is impracticable; in such a circumstance, it shall be made available to the defense for inspection and copying.

The exculpatory information to be disclosed includes, but is not limited to, the following:

1) information that is inconsistent with or tends to negate the defendant's guilt as to any element, including identification, of the offense(s) with which the defendant is charged;

2) information that tends to mitigate the charged offense(s) or reduce the potential penalty or guideline range;

3) information that tends to establish an articulated and legally-cognizable defense theory or recognized affirmative defense to the offense(s) with which the defendant is charged;

4) information that casts doubt on the credibility or accuracy of any evidence, including witness testimony;

5) impeachment information, which includes, but it not limited to—

    a. information regarding whether any promise, reward, or inducement

      has been given or will be given later by the government to any witness;

  b. information that identifies all pending criminal cases against, and all criminal convictions of, any witness, and a copy of any criminal record of any witness, identifying by name each such witness;

  c. any inconsistent statement, or a description of such a statement, made orally or in writing by any witness, regarding the alleged criminal conduct of the defendant;

  d. information reflecting bias or prejudice against the defendant by any witness;

  e. a written description of any prosecutable federal offense known by the government to have been committed by any witness;

  f. a written description of any conduct that may be admissible under Fed. R. Evid. 608(b) known by the government to have been committed by a witness; and

  g. information known to the government of any mental or physical impairment of any witness whom the government anticipates calling in its case-in-chief that may cast doubt on the ability of that witness to testify accurately or truthfully at trial as to any relevant event.

6) information potentially relevant to pre-trial motions, including but not limited to motions to suppress, dismiss, or *in limine*; and

7) no later than the close of the defendant's case, the government shall disclose any exculpatory information relevant to rebuttal.

In the event the government believes that a disclosure under this rule would

compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of the requirements of this rule, which may include in camera review and/or withholding or subjecting to a protective order all or part of the information. The government shall notify the defense of any such application.

For purposes of this rule, the government includes federal, state, and local law enforcement officers and other government officials who have participated in the investigation and prosecution of the offense(s) with which the defendant is charged. The government has an obligation to seek from these sources all information subject to disclosure under this Rule.

If the government fails to comply with this rule, the Court, in addition to ordering production of the information, may:

(1) specify the terms and conditions of such production;
(2) grant a continuance;
(3) impose evidentiary sanctions;
(4) enter any other order that is just under the circumstances.

### III.    Conclusion

Congress did not enact the Due Process Protection Act so courts could enter gentle *Brady* reminders that have no effect. No, the Act reflects the need for courts to detail not only what those obligations entail, but also the consequences when those obligations aren't followed—particularly in light of *Bundy* and *Nejad*.

Because James Cloud's request is reasonable, supported by law, and timely, he respectfully asks the Court to enter an Order consistent with the above-proposed

language. Doing so doesn't harm the Court or the United States; it simply helps secure James Cloud's constitutional rights.

Dated: November 19, 2020.

> Federal Defenders of Eastern Washington & Idaho
> <u>s/ John B. McEntire, IV</u>
> John B. McEntire, IV, WSBA #39469
> 10 North Post Street, Suite 700
> Spokane, Washington 99201
> 509.624.7606
> jay_mcentire@fd.org

### Service Certificate

I certify that on November 19, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Thomas J. Hanlon and Richard Burson.

> <u>s/ John B. McEntire IV</u>
> John B. McEntire, IV, WSBA #39469
> 10 North Post Street, Suite 700
> Spokane, Washington 99201
> 509.624.7606
> jay_mcentire@fd.org