```
                                                                    1

                       UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,      )  Case No. 1:19-cr-02032-SMJ-1
                               )
                    Plaintiff, )  November 23, 2020
                               )  Video Conference
vs.                            )
                               )  Digital Recording:
JAMES DEAN CLOUD,              )  Arraignment & Motion Hearing
                               )
                    Defendant. )  Pages 1 - 19

              BEFORE THE HONORABLE MARY K. DIMKE
              UNITED STATES MAGISTRATE COURT JUDGE

APPEARANCES:

For the Plaintiff:         THOMAS J. HANLON
                           U.S. Attorney's Office
                           402 E. Yakima Ave., Ste. 210
                           Yakima, Washington 98901

For the Defendant:         JOHN BARTO MCENTIRE, IV
                           LORINDA MEIER YOUNGCOURT
                           Federal Defenders of Eastern
                           Washington & Idaho
                           N. 10 Post St., Ste. 700
                           Spokane, Washington 99201

                           JEREMY B. SPORN
                           Federal Defenders of Eastern
                           Washington & Idaho
                           306 E. Chestnut Ave.
                           Yakima, Washington 98901


Official Court Reporter:   Allison R. Anderson, RMR, CRR, CCR
                           United States District Courthouse
                           P.O. Box 700
                           Spokane, Washington 99210
                           (509) 458-3465



Proceedings recorded electronically; transcribed therefrom.
```

1        (Court convened on November 23, 2020, at 4:08 p.m.)

2            THE COURTROOM DEPUTY:  The matter now before the Court

3   is *United States of America versus James Dean Cloud*, Case No.

4   1:19-cr-2032-SMJ, Defendant No. 1; time set for arraignment on a

5   superseding indictment, also defendant's renewed motion to enter

6   Due Process Protection Act and motion to expedite that hearing.

7   Present for the government is Tom Hanlon.  Present for the

8   defendant is Lorinda Youngcourt, Jay McEntire, and Jeremy Sporn.

9            THE COURT:  All right.  Good afternoon to Counsel.

10       Good afternoon, Mr. Cloud.  So sir, today we're here for

11  your arraignment on a third superseding indictment.  I'm going

12  to start with -- is your true name James Dean Cloud?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  And let me just check. Ms. Howard, are

15  you able to pick that up without a microphone?  If we can get

16  the handheld microphone?

17       Mr. Cloud, we're going to give you a handheld microphone so

18  that we can hear your responses because with the mask and how

19  far away you are from a microphone, it's hard to hear you, okay?

20           THE DEFENDANT:  Yes, ma'am.

21           THE COURTROOM DEPUTY:  Testing.

22           THE DEFENDANT:  Hello.

23           THE COURT:  All right.  Can you hold the microphone?

24           THE DEFENDANT:  Sure.

25           THE COURT:  Okay.  All right.  Sir, is your true name

1  James Dean Cloud?
2          THE DEFENDANT:  Yes, ma'am.
3          THE COURT:  Are you taking any medication or under any
4  disability that would impact your ability to understand the
5  proceedings today?
6          THE DEFENDANT:  No, ma'am.
7          THE COURT:  As I mentioned, you're here for an
8  arraignment on a third superseding indictment.  Due process
9  requires that you be notified of the charges, the maximum
10 possible penalties, and various rights that you have.  In just a
11 moment, I'm going to ask the prosecutor to summarize the
12 charges, but let me take up this issue of --
13     Counsel, you haven't said anything and haven't raised it
14 yet.  I have approved leg restraints, which is a reduction of
15 the restraints I had previously authorized in magistrate court.
16 Do you want that issue taken up?
17         MR. MCENTIRE:  Your Honor, that's fine.  No, thank
18 you.
19         THE COURT:  All right.
20    All right, Mr. Cloud.  So it's my understanding you've been
21 given a copy of the indictment; is that correct?
22         THE DEFENDANT:  Yes, ma'am.
23         THE COURT:  Have you had a chance to read it?
24         THE DEFENDANT:  Yes, ma'am.
25         THE COURT:  All right. At this time, I'm going to ask

1  that the prosecutor summarize the 14 counts and the maximum
2  possible penalties associated with those counts.
3        Mr. Hanlon, you can stay at counsel table.
4             MR. HANLON:  Thank you, Your Honor.
5        On November 17th of this year, a third superseding
6  indictment was filed charging the defendant with Count 1,
7  carjacking, in violation of 18 United States Code Section 2119
8  and 2.  This offense carries a penalty of not more than 15 years
9  imprisonment, a fine of up to $250,000, or both, five years
10 supervised release, and a $100 special penalty assessment.
11       Counts 2 and 6, brandishing of a firearm in furtherance of
12 a crime of violence, in violation of 18 United States Code
13 Section 924(c)(1)(A)(i) and (ii), this offense carries a maximum
14 penalty of not less than seven years and a maximum of life
15 imprisonment, a fine of up to $250,000, or both, five years
16 supervised release, and a $100 special penalty assessment.
17       Count 4, kidnapping, in violation of 18 United States Code
18 Section 2109, 1153 and 3559(f)(2) and 2, this offense carries a
19 maximum penalty of not less than 25 years imprisonment, a
20 maximum of life imprisonment, a fine of up to $250,000, or both,
21 five years supervised release, and a $100 special penalty
22 assessment.
23       Count 5, assault with a dangerous weapon, in violation of
24 18 United States Code Section 113(a)(3) and Section 1153, this
25 offense carries a maximum penalty of not more than ten years

1  imprisonment, a fine of up to $250,000, or both, three years
2  supervised release, and a $100 special penalty assessment.
3      Counts 7 and 14 charging first-degree murder, in violation
4  of 18 United States Code Section 1111, 1153 and 2, this offense
5  has a mandatory life imprisonment, a fine of up to $250,000, or
6  both, five years supervised release, and a $100 special penalty
7  assessment.
8      Count 9 charging second-degree murder, in violation of 18
9  United States Code Section 1111 and 1153, this offense carries a
10 maximum penalty of any terms of years or for life, a fine of up
11 to $250,000, or both, five years supervised release, and a $100
12 special penalty assessment.
13     Counts 8 and 15 charging discharge of a firearm in
14 furtherance of a crime of violence, in violation of 18 United
15 States Code Section 924(c)(1)(A)(i), (iii), and Section 2, this
16 offense carries a penalty of not less than ten years
17 imprisonment and a maximum of life imprisonment, a fine of up to
18 $250,000, or both, five years supervised release, and a $100
19 special penalty assessment.
20     Counts 10 and 12 charging first-degree murder, in violation
21 of 18 United States Code Section 1111 and 1153, this offense has
22 a mandatory life imprisonment, a fine of up to $250,000, or
23 both, five years supervised release, and a $100 special penalty
24 assessment.
25     And Counts 11 and 13 charging discharge of a firearm in

1  furtherance of a crime of violence, in violation of 18 United
2  States Code Section 924(c)(1)(A)(i) through (iii), this offense
3  carries a maximum penalty of not less than ten years
4  imprisonment, a maximum of life imprisonment, a fine of up to
5  $250,000, or both, five years supervised release, and a $100
6  special penalty assessment.  Thank you.
7           THE COURT:  All right.  Mr. Cloud, do you understand
8  those 14 counts?
9           THE DEFENDANT:  Yes, ma'am.
10          THE COURT:  Would you like the indictment read to you
11 in its entirety in court today, or do you sufficiently
12 understand the charges?
13          THE DEFENDANT:  I understand the charges.  Thank you.
14          THE COURT:  All right.  Do you understand the maximum
15 possible penalties associated with each of the 14 counts?
16          THE DEFENDANT:  Yes, ma'am.
17          THE COURT:  All right.  I'm going to enter "not
18 guilty" pleas on your behalf to the 14 counts.
19     Next we're going to discuss your rights.  First, you have
20 the right to an attorney during all stages of this criminal
21 case.  That includes the right to retain your own attorney if
22 you can afford it.  It also includes the right to have the Court
23 appoint a lawyer for you at no cost to you if you cannot afford
24 your own lawyer.  Previously, the Court appointed the Office of
25 the Federal Defender to represent you in this matter.  Would you

1  like for that office to continue representing you?
2              THE DEFENDANT:  Yes, ma'am.
3              THE COURT:  All right.  I'll so order.
4     You also have the right to silence, which means you have no
5  obligation to make any statement about this matter.  It's
6  important that you understand if you were to make a statement to
7  anyone about the charges or the facts underlying the charges,
8  the government could use your statements against you in
9  prosecuting the charges.  Do you understand that?
10             THE DEFENDANT:  Yes, ma'am.
11             THE COURT:  You also have the right to a jury trial
12 before a United States district judge on these charges.  At that
13 jury trial, you will have the opportunity to see and to hear the
14 government's witnesses and evidence.  Your attorney will have
15 the right to cross-examine the government's witnesses.  You'll
16 have the right to present your own evidence, if you choose, and
17 the right to compel witnesses to testify in your behalf.  Do you
18 understand that you have the right to a jury trial on these
19 charges?
20             THE DEFENDANT:  Yes, ma'am.
21             THE COURT:  You're also presumed innocent of the
22 charges unless and until the government proves the charges
23 beyond a reasonable doubt at the jury trial.  Do you understand
24 that you are currently presumed innocent?
25             THE DEFENDANT:  Yes, ma'am.

1    THE COURT: You also have the right, if you're not a
2 citizen of the United States, to request that a government
3 attorney notify the consulate of your home country of the fact
4 these charges have been brought and you've been arrested. Do
5 you understand that?
6    THE DEFENDANT: Yes, ma'am.
7    THE COURT: All right. I'll order that discovery be
8 provided pursuant to the local rule.
9    There's a motion for a Rule 5(f) order to be given in this
10 case. It seems appropriate to me, given new charges have been
11 brought, that an instruction be given, and the question would be
12 the content of the instruction.
13    But Mr. Hanlon, do you want to be heard on whether an order
14 should be given, given the fact of these new charges?
15    MR. HANLON: Your Honor, I believe the instruction
16 that was provided to the codefendant earlier today were
17 appropriate.
18    THE COURT: All right. But you don't have any
19 objection to an instruction being given.
20    MR. HANLON: Correct, Your Honor.
21    THE COURT: All right. So it's the issue of the
22 content of the instruction.
23    MR. HANLON: That's correct, Your Honor.
24    THE COURT: All right. Who, on behalf of defense,
25 would like to address the issue of the requested instruction?

1  And just so the parties are aware, I have a standard instruction
2  that I give, and so I'll just highlight it now so that you know
3  before we get started in argument what I typically say.  I
4  typically order that the United States produce all exculpatory
5  information pursuant to *Brady versus Maryland* and its progeny.
6  Failure to do so in a timely manner could result in
7  consequences, including, but not limited to, exclusion of
8  witnesses and evidence, adverse jury instructions, dismissal of
9  charges, and contempt proceedings by the Court.  That's the
10 typical instruction I give, but I'm happy to hear argument from
11 defense if you want something more expansive, as in your motion.
12         MR. MCENTIRE:  Your Honor, where would you like me to
13 speak from?
14         THE COURT:  I would suggest -- we've asked that
15 everyone stay at the table just to minimize the places that
16 everyone touches while they're in the courtroom.
17         MR. MCENTIRE:  Understood.  I had two questions coming
18 into the hearing today.  The first one has been resolved in
19 terms of whether the Court is going to issue a 5(f) statement.
20 Can the Court hear me okay?
21         THE COURT:  I can, yes.  Thank you.
22         MR. MCENTIRE:  Your Honor, I -- I laid out in my
23 renewed motion why I think the Congressional intent behind the
24 Due Process Protection Act goes far beyond a simple rote
25 statement, including citations to the Congressional Record as

well. I think where I want to focus my comments that I think make the most sense are this afternoon, we -- I guess I'll put it this way.

I think a useful parallel analogy that makes sense to me is -- is analogizing -- it's actually to the First Amendment juris prudence in the sense that there is a very short rule that has a lot of cases discussing this, dozens of Supreme Court decisions spanning over decades, and that's the exact same type of situation that we have here. And the problem with First Amendment juris prudence is it's a hot mess; it truly is, in terms of trying to find a clear, discernible, clear, one-page or two-page summary of what the First Amendment protects and doesn't has been befuddling constitutional scholars for quite some time.

And I think that there's a parallel here because what you have is Fifth Amendment and Sixth Amendment juris prudence that has been developing and evolving over decades is codified in many, many, many, many dozens of opinions, and the problem is that it's not in a particular succinct location. And I think that is where the Due Process Protection Act really kind of comes in, which is bringing everything spread across statute, Supreme Court decisions, as well as appellate court authority into one place. And so the phrase "*Brady* and its progeny," what does that mean? And I think that's a really interesting, actually important question to ask just because you've got

1 *Brady*, *Bagley*, *Giglio*, *Henthorn*, *Roviaro*, *Agurs*, all of these
2 cases that are discussing all these things.
3     And this afternoon, we -- we've been trying to address this
4 on the district-wide level as well by communicating with Chief
5 Judge Bastian, and we started off discussions with the United
6 States Attorney's Office, and both sent collective proposals to
7 the Chief Judge. And one of the things that stood out is we
8 received the response from U.S. Attorney's Office today, Your
9 Honor, this afternoon, and a sentence stood out to me that I
10 just wanted to bring to you that I think captures the issue with
11 a more condensed issue of Rule 5.
12     The U.S. attorney felt the slip noted that, respectfully,
13 where discovery concerns have been raised, such are based on
14 good faith disagreements about materiality or relevance rather
15 than from any effort to unconstitutionally suppress exculpatory
16 evidence. And I don't think that the situation that comes up is
17 intentional bad faith by the government. I think the problem is
18 there's a lack of clarity as to what they actually do need to
19 provide under "*Brady* and its progeny," and that's -- that
20 sentence right there hits the nail on the head because good
21 faith agreements about materiality -- for example, materiality
22 is something that -- cited in my motion, Your Honor -- the Ninth
23 Circuit has had to clarify in *United States v. Olsen*.
24     Materiality is not an appellate threshold. Materiality is
25 something different entirely that is a much lower threshold, and

1  this is just one little example of disagreement, confusion
2  regarding what -- regarding what these obligations are. And so
3  I don't think it's crazy to say that if -- what the DPPA states
4  is that it's not creating new law. It's simply requiring an
5  enforcement of existing law.
6       It's not crazy to say we should have and put together all
7  of the existing laws in one place for the government, for the
8  Court, for defense, to ensure everybody's on the same page.
9  That's notice. Because if the government is being given notice
10 that you need to follow *Brady* and its progeny, what we don't
11 want to end up with is, "Oh, I didn't realize that that was part
12 of *Brady*'s progeny. I didn't realize that that was part of our
13 obligations. I didn't realize that that was material." And
14 that's the problem.
15      And I think that the D.C. Circuit as well as Massachusetts
16 and many others have addressed this issue by providing a
17 substantive, robust *Brady*-and-its-progeny disclosure to ensure
18 everyone is on the same page and there's no ambiguity regarding
19 what the United States needs to provide.
20           THE COURT: In the District of D.C. and the District
21 of Massachusetts, isn't that done by local rule?
22           MR. MCENTIRE: It is.
23           THE COURT: Which is determined by all of the district
24 judges with input from all of the relevant stakeholders; is that
25 correct?

1    MR. MCENTIRE:  Correct, Your Honor.  And so -- and
2 I've also found two standing orders.  One was from the -- I
3 think it's the Southern District of West Virginia has issued a
4 more robust *Brady* order -- a standing order, that is, Your
5 Honor, rather than addressed it by local rule.  And then I also
6 came across the District of Oregon that has a standing order as
7 well, but again, not done by local rule.  So I think it's being
8 -- it's sort of a piecemeal on how districts across the country
9 have gone about to try to address this, but what stands out to
10 me about the D.C. Circuit local rule is that's what was cited in
11 the Due Process Protection Act itself of an example, a clear
12 example of what seemed to work.
13    And I don't think that Congress talking about that in the
14 legislative history, specifically referencing the *Stevens*
15 prosecution and specifically referencing the fallout from it and
16 what the D.C. Circuit did in order to remedy that is *Phillip*s,
17 right?  I think that that is a clear example of where Congress
18 is going with intent on outlining the Due Process Protection Act
19 and what it should contain.  And so while I think Rule 5(f)
20 itself is succinct and it doesn't impose upon the government any
21 additional obligations, I don't think it was meant to be
22 succinct in terms of just *Brady* and its progeny.  I think that
23 is -- it perpetuates the continuing problem that we have, which
24 is confusion on exactly what *"Brady* obligations" are.
25    And so I -- I wasn't trying to reinvent the wheel here,

1  Your Honor.  What I did instead is quite literally take Local
2  Rule 5.1 from the District of Columbia, tweaked it slightly
3  because it's -- actually, one of the interesting things that I
4  think is frequently glossed over is we have an RPC.  Most states
5  have the exact same RPC under 3.8 for special responsibilities
6  of prosecutors, which there's a statute requiring the United
7  States -- Assistant United States Attorneys to follow.  That is
8  more expansive than -- than even *Brady* itself.
9       And so my only modification to the D.C. Circuit's proposed
10 5.1 was to inject literally what is required we follow by law
11 anyway, and so I just wanted to clarify where I deviated in my
12 proposal to the Court under our DPPA model, which was
13 essentially adding in what's already codified as Washington RPC
14 3.8 for special responsibilities for prosecutors.
15      So bringing this full circle, I -- I appreciate that the
16 Court has and is imposing an -- (inaudible) for James Cloud a --
17 something involving a Rule 5(f) notification.  I think when
18 unpacking the legislative history, it was meant to go beyond a
19 simple *Brady* and its progeny because that just creates ambiguity
20 where I think the DPPA was trying to address that.  And so the
21 proposal's listed in the motion, Your Honor, and that's the
22 language that we would ask the Court to adopt in this case.
23           THE COURT:  Thank you, Mr. McEntire.
24      Mr. Hanlon.
25           MR. HANLON:  Your Honor, it's the government's

1  position that the Court's proposed instruction is not confusing.
2  It's concise, and it's sufficient, and we believe it's warranted
3  in this case, Your Honor.
4              THE COURT: Mr. McEntire, anything further?
5              MR. MCENTIRE: My only concern, Your Honor, is as I --
6  as I read the United States Attorney's Office official response
7  is that -- again, that quote that I raised is good faith
8  disagreements about materiality or relevance, that that's where
9  issues pop it. It shows that there is a lack of clarity on
10 exactly what *"Brady* and its progeny" means. And if the goal of
11 the DPPA is to provide clarity in that and to take existing
12 obligations and bring them under one hood, I think that that is
13 a good thing, and I don't think that there is -- again, we are
14 not asking for additional obligations. We're asking to make
15 those obligations clear and put them in one place, and I don't
16 think that that's a crazy ask, and we would ask the Court to
17 issue a Rule (f) order that is more consistent with what
18 Congress was intending when unpacking the legislative history.
19             THE COURT: Thank you, Mr. McEntire.
20      At this time, I'm going to deny the request for the more
21 expansive instruction and -- for the following reasons. First,
22 in terms of the issue about materiality, my instruction does not
23 list materiality. It says all exculpatory evidence; so that
24 does address that particular issue raised by defense, is that I
25 don't include materiality as an element.

1    The second issue -- and I think this is important for the
2 culture of each particular district.  Here in Eastern
3 Washington, the magistrate judges do not handle the discovery of
4 criminal cases.  And it is my view that in any each criminal
5 case when discovery orders are going to be given that are not
6 related to the local rules that those should be determined by
7 the district judge that will eventually arbitrate any dispute
8 that comes up with respect to discovery.
9    So my view is actually this particular motion asking for a
10 more precise discussion is more appropriately directed to Judge
11 Mendoza.  I appreciate that this has been raised to him and he
12 declined at the time because the charges that existed existed
13 prior to the passage of the act.  Now I think there's a
14 different procedural posture, is that new charges have arisen
15 after the act was passed, and -- but I do think that this --
16    I agree with everything that you're saying, Mr. McEntire,
17 is that there is a lack of clarity on certain issues.  The
18 question is who's the right person to clarify those issues in
19 this particular case?  Given the fact that the district judge is
20 the one who will address discovery, will rule on any discovery-
21 related issues, I think it's more appropriate for the district
22 judge, if he wishes, to craft a more direct and precise
23 instruction with the benefit of the input of both the parties.
24    I'm not inclined at this point to give instructions or
25 essentially local rules from other districts where those local

1  rules receive the input of various stakeholders, of lawyers on
2  both sides, the CJA panel.  Other -- other vested folks
3  participate in that, and the judges agree as a district what
4  language is -- is going to govern the district, and that process
5  hasn't happened here.  I encourage the parties to begin that,
6  but it hasn't happened here, and so I don't think it's
7  appropriate for me to enter those on behalf of the district
8  judge, and so I would encourage the parties to take this up with
9  Judge Mendoza.
10             MR. MCENTIRE:  Understood, Your Honor.  Thank you.
11             THE COURT:  All right.  So as I said, the United
12 States is directed to produce all exculpatory evidence pursuant
13 to *Brady versus Maryland* and its progeny.  Failure to do so
14 could result in consequences, including, but not limited to,
15 exclusion of witnesses and evidence, adverse jury instruction,
16 dismissal of charges, and contempt proceedings before the Court.
17    All right.  So that takes us to the conclusion of the
18 arraignment on the superseding indictment.  Is there anything
19 else I should take up for the parties today?
20             MR. HANLON:  No, Your Honor.
21             THE COURT:  Mr. McEntire?
22             MR. MCENTIRE:  And not from our perspective. Thank
23 you, Your Honor.
24             THE COURT:  All right.  Mr. Cloud, as you know, your
25 matter's assigned to Judge Mendoza.  He's going to set all of

1 your future court dates; and if there's any change in the trial
2 date as a result of the new charges, it's my understanding
3 you're going to see him tomorrow where I'm guessing many of
4 these issues will be taken up, all right?
5          THE DEFENDANT:  Yes, ma'am.  Thank you.
6          THE COURT:  All right.  That's it for today, sir.
7 Thank you.
8      (Court adjourned on November 23, 2020, at 4:30 p.m.)

C E R T I F I C A T E

I, ALLISON R. ANDERSON, do hereby certify:

That I am an Official Court Reporter for the United States District Court for the Eastern District of Washington in Spokane, Washington;

That the foregoing proceedings were taken on the date and at the time and place as shown on the first page hereto; and

That the foregoing proceedings are a full, true, and accurate transcription to the best of my ability after listening to the official electronic sound recording of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

DATED this 4th day of December, 2020.

_____
ALLISON R. ANDERSON, RMR, CRR
Washington CCR No. 2006
Official Court Reporter
Spokane, Washington