

John B. McEntire, IV
*Senior Litigator*
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for James D. Cloud

# United States District Court
## Eastern District of Washington
### Honorable Salvador Mendoza, Jr.

| | |
|---|---|
| United States,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>James Dean Cloud,<br><br>　　　　　　Defendant. | No. 19-CR-2032-SMJ-1<br><br>Motion in Limine Re:<br>What Morris Jackson Saw<br><br>May 18, 2021 – 10:00 a.m.<br><br>Yakima—With Argument |

# Table of Contents

I.    Introduction................................................................................................... 2

II.   Discussion ......................................................................................................3

    A.    Mr. Jackson's lay opinions on who-shot-who are excludable under Rule 602 because he lacks personal knowledge. .......................................................3

    B.    Mr. Jackson's lay opinions on who-shot-who are excludable under Rule 701 because he lacks personal knowledge and his testimony is unhelpful. ...................5

III.  Conclusion.......................................................................................................7

# I.    Introduction

" *You're our number one witness. Okay?* "

-    Detective Brian McIlrath to Morris Jackson[1]

According to authorities, Morris Jackson is the Government's best eyewitness against the Clouds. But over many interviews, a discrepancy emerges: Mr. Jackson makes claims (e.g., "I think they just randomly started killing everybody")[2] without the personal knowledge to back them up. No less than 29 times, Mr. Jackson told 5 law enforcement officers over 3 interviews in 15 ways he saw 0 shootings.

Not one.

This transforms the Government's best witness into its most dangerous one, with the potential to fill a jury's ears with what Mr. Jackson thinks, not what he knows—or, to use Mr. Jackson's own words, what he "just kind of pieced together."[3]

Evidence rules bar baseless testimony like this under two equally-persuasive grounds:

-    ***Rule 602*** (a witness needs personal knowledge); and

-    ***Rule 701*** (a witness's lay opinion needs to be based on his perceptions).

Each ground will be addressed in turn.

---

[1] Mr. Jackson's 06/08/19 interview. (Bates 6930.)

[2] Mr. Jackson's 06/20/19 interview. (Bates 13614.)

[3] Mr. Jackson's 06/20/19 interview. (Bates 13615.)

## II.    Discussion

### A.    Mr. Jackson's lay opinions on who-shot-who are excludable under Rule 602 because he lacks personal knowledge.

At trial, Mr. Jackson will likely offer lay-opinion testimony on who-shot-who that lacks personal knowledge. This is prohibited by Rule 602. *See* Fed. R. Evid. 602 (2021) ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has ***personal knowledge*** of the matter.") (emphasis added). "Personal knowledge means knowledge produced by the direct involvement of the senses." *U.S. v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014) (citation omitted). So if a witness intends to describe a car accident, she must have *seen* the car accident; and if a witness intends to describe a conversation, she must have *heard* the conversation; and if a witness intends to describe who he thinks shot someone, he must have *seen* what unfolded.

Here, Mr. Jackson did not *see* anyone get shot. There are too many instances of Mr. Jackson telling police he saw nothing to list. The best measure is this:[4]

---

[4] "And he asked me did I actually see any shootings. No. I didn't." (Bates 6921 – 6/08/19 Interview); "I didn't actually see anyone get shot." (Bates 6925 – 6/08/19 Interview); "And then while I was getting in the truck, you know, they shot that guy. I mean, I didn't see it." (Bates 6926 – 6/08/19 Interview); "I don't know who shot [T.H.]." (Bates 6926 – 6/08/19 Interview); "I don't know what happened in there." (Bates 6934 – 6/08/19 Interview); "I didn't see 'em get shot though. I didn't witness that part of it." (Bates 6938 – 6/08/19 Interview); [In response to what he saw the Clouds doing while sitting inside the SUV]: "Nothing." (Bates 6927 – 6/08/19 Interview); "I didn't see that happen. I did not see." (Bates 6953 – 6/08/19); "I don't know, I didn't, I didn't go in. I have no fucking idea. [J.C.] could be ag home right now. . . ." (Bates 6973 –

6/08/19 Interview); "No, I didn't see that. Man, I didn't. I've said that to you guys." (Bates 6982 – 6/08/19); "No I never did see him get shot." (Bates 6999 – 6/09/19 Interview); "No I didn't. I didn't see nothing like that." (Bates 7007 – 6/09/19 Interview; "Not with my own eyes." (Bates 11866 – 6/11/19 Interview); "Well I never seen them shoot anyone." (Bates 11866 – 6/11/19 Interview); "I didn't see any of that." (Bates 11867 – 6/11/19 Interview); "I didn't actually see it." (Bates 11885 – 6/11/19 Interview); [In response to what gun did they use]: "I didn't, I don't know." (Bates 11885 ( 6/11/19 Interview); [In response to if he saw who shot M.S.]: "No, I didn't." (Bates 11874 – 6/11/19 Interview); "That other stuff before, I don't know. I didn't see any of that[.]" (Bates 11867 – 6/11/19 Interview); "Well, there was a guy in the driveway. I know they shot him. And I didn't see I was out of view of it." (Bates 11867 – 6/11/19 Interview); [In response to who killed C.E.]: "Well I know she ended up dead, yes, but no I didn't see. . . ." (Bates 13619 – 6/20/19 Interview); [In response to who shot C.E.]: "I don't know. . . I didn't see anyone shoot her." (Bates 13625 – 6/20/19 Interview); [In response to who shot C.E.]: "I don't remember seeing anyone. . . I didn't see anyone shoot her." (Bates 13625 – 6/20/19 Interview); [In response to who shot J.C.]: "I wasn't—I didn't see anyone shoot him either. . . ." (Bates 13625 – 6/20/19 Interview); [In response to who had the gun that killed people]: "But, um, I can't say who had that gun I just figured James did. . . .That's just all that's just why I put it together from there." (Bates 13607 – 6/20/19 Interview); [In response to who he saw shot T.H.]: "I didn't." (Bates 13664 – 6/09/19 Interview).

MIL Re: What Mr. Jackson Saw

– 4 –

Mr. Jackson does claim he saw the aftermath, but witnessing the aftermath does not give him license to guess. *See* 3 Federal Evidence § 6:6 (4th ed. 2021) (noting if a witness is reduced to guessing, "then the knowledge requirement is not satisfied and the testimony should be excluded.").

### B.    Mr. Jackson's lay opinions on who-shot-who are excludable under Rule 701 because he lacks personal knowledge and his testimony is unhelpful.

Mr. Jackson's anticipated lay-opinion testimony at trial on who-shot-who fails two of Rule 701's three prongs: 1) his lay opinion is not based on his personal perception; and 2) his lay opinion is unhelpful to a jury.

Rule 701 contains a three-fold admission criteria for lay-opinion testimony:

1)  rationally based on the witness's perception

2)  it must be helpful to understanding the witness's testimony or determining a fact in issue; and

3)  it cannot be expert testimony.

*See* Fed. R. Evid. 701 (2021).

Mr. Jackson's anticipated lay-opinion testimony fails Rule 701's first prong because it is not based on personal perception. *See Lopez*, 762 F.3d at 864 (noting that Rule 701(a), like Rule 602, contains "the familiar requirement of first-hand knowledge or observation"). And as noted, Mr. Jackson stated—many times over—he never saw

MIL Re: What Mr. Jackson Saw
– 5 –

who shot anyone, so his testimony on who-shot-who would not be based on personal perceptions.

Mr. Jackson's anticipated lay-opinion testimony fails Rule 701's second prong because it is unhelpful. In a way, this second prong serves as a due process backup since the rule "is designed to provide assurance against the admission of opinions which would merely tell the jury what result to reach." *U.S. v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004) (cleaned up). Unfounded opinion testimony on who-shot-who, or who he thinks possessed the murder weapon ("I can't say who had the gun I just figured James"), which is what "he just kind of pieced together," doesn't assist the jury in finding out what happened. To the contrary, such testimony distracts from the key issue by picking a side and intruding on the jury's role. *See U.S. v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016) (Rule 701 is "carefully designed to exclude lay opinion testimony that amounts to little more than choosing up sides, or that merely tells the jury what result to reach.").

### III.   Conclusion

"*It is not enough for a witness to tell all she knows;
she must know all she tells.*"[5]

James Cloud objects to Mr. Jackson testifying about what *he thinks* happened after "piecing things together," as doing so runs afoul of Rule 602, Rule 701, and Mr. Cloud's right to a fair trial.

Dated: April 13, 2021.

Federal Defenders of Eastern Washington & Idaho
Attorneys for James D. Cloud

s/ John B. McEntire, IV
John B. McEntire, IV, WSBA No. 39469
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
jay_mcentire@fd.org

---

[5] *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) (discussing Rule 602's personal knowledge requirement in a civil action on discrimination and retaliation).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

### Service Certificate

I certify that on April 13, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System, which will notify Assistant United

States Attorneys: Tom Hanlon and Rick Burson.

s/ John B. McEntire, IV
John B. McEntire, IV, WSBA No. 39469
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
jay_mcentire@fd.org
