Jeremy B. Sporn
Federal Defenders of Eastern Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920

Attorneys for the Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
The Honorable SALVADOR MENDOZA, JR.

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>James D. Cloud,<br><br>　　　　　Defendant. | Case No. 1:19-cr-2032-SMJ-1<br><br>**Motion to Compel and/or**<br>**Unseal Proceedings**<br><br>Yakima - With Oral Argument<br><br>May 18, 2021, at 10:00 |

The defendant, James Cloud, respectfully moves for an order compelling the disclosure and/or ordering unsealed transcripts of release proceedings and other filings[1] in *United States v. Morris Jackson*, in Case No. 19-cr-2039-SMJ in this district. The Court, to recall, is likely familiar with the underlying allegations in this case from the extensive litigation and lengthy hearing on eyewitness identification issues, culminating in

---

[1] Consistent with the applicable local rule governing discovery motions under Rule 16 (whether or not that is the appropriate rubric for this motion), defense counsel requested the materials from the government, which has to date declined to make them available. Therefore, the issue is ripe for this Court's resolution pursuant to local practices and requirements.

Motion to Compel/Unseal

1

its order denying the defense motions. ECF Document No. 219. This Court is also presiding over Mr. Jackson's separate docket, and as such, we will attempt to avoid unnecessary or cumulative factual development. But for the reasons that follow, and in light of the seriousness of the charges against him, James Cloud and his defense team require access to materials that are crucial to his ability to mount a meaningful defense, and that lack justification to remain sealed and undisclosed. He requires them now, by rule, by statute, under the Constitution, and out of fundamental fairness.

## I. The Proceedings to Date

On June 8, 2019, shortly after police received a call that a carjacking had occurred at a residence on Evans Road in Wapato, law enforcement arrested Mr. Jackson and his niece, in an orchard or field close to where the carjacking had allegedly occurred. This location was not far from another residence further west on the Yakama reservation, at Medicine Valley Road, where five people had evidently been murdered shortly before, and which had been the subject of an additional call to law enforcement from a pick-up truck that had left the scene. Both Morris Jackson and his niece implicated James Cloud and his co-defendant, Donovan Cloud, in the events at Medicine Valley, although as discussed in a separate motion, neither appears (to Mr. Cloud's knowledge, based on discovery received to date) to have claimed to actually seen James Cloud shoot anyone at Medicine Valley Road on June 8.

Motion to Compel/Unseal

      Multiple witnesses indicated to law enforcement that a male wearing a blue shirt fired a shotgun at Medicine Valley Road in the direction of DO's fleeing truck, and striking EZ and LL, and identified Morris Jackson in a photo lineup. Those same witnesses also identified James Cloud as having shot DO, as discussed extensively during the eyewitness identification hearing. Mr. Jackson's admissions as to having worn a blue shirt and having told the occupants of the truck that JC was not seeing visitors when they arrived at the residence also served to buttress the reliability of their identifications of Mr. Jackson.

      There was also evidence that Mr. Jackson had discarded a .22 rifle in a nearby canal, which he had essentially confirmed in interviews, and that that weapon was used to shoot some of the victims at Medicine Valley. Subsequent evidence the government has obtained indeed purports to link it to the murders at Medicine Valley. In its early interviews, the government repeatedly pressed Mr. Jackson on his involvement in the shootings at the Medicine Valley residence, plainly disbelieving his account that his conduct was essentially that of an unwitting bystander forced to gather belongings or possess a firearm, but who did not commit any acts of violence.

      On July 17, 2019, the government indicted Mr. Jackson for possessing a firearm – the Ruger rifle recovered from the nearby canal shortly after the events on June 8 - after being convicted of a felony offense, in violation of 18 U.S.C. § 922(g). Mr. Jackson appears to have remained in custody while that case was pending. The ECF docket

Motion to Compel/Unseal

entries, however, do not reflect any activity for nearly a year, until February 17, 2021. On that date, according to the publicly-available ECF docket entry, this Court ordered Mr. Jackson released. ECF Document No. 77 in Case No. 19-cr-2039 (the AO-199C form warning as to additional penalties for crimes committed while on pre-trial release). Thus, it is apparent that Mr. Jackson was ordered released, and presumably not on the Court's own initiative, *sua sponte*. But without having a transcript of, or other briefing related to such proceedings, it is difficult to ascertain precisely what was argued to prompt Mr. Jackson's release.

What appears clear, however, is that the government did *not* argue that Mr. Jackson must be detained because of his role in shooting at DO's truck and wounding both LL and EZ. Mr. Cloud is skeptical that the Court would have agreed to release Mr. Jackson in the face of evidence and a government argument that he was responsible for shooting at and wounding LL and EZ with a shotgun while at the Medicine Valley residence. This about-face is consistent with the government's latest superseding indictment, which charges co-defendant Donovan Cloud[2] with assaulting both LL and EZ with intent to commit murder, i.e. shooting in their direction with a shotgun, and

---

[2] This apparent *volte-face* from the government's previous position was the subject of Donovan Cloud's motion for a bill of particulars. ECF Document Nos. 297, 300. The Court's denial of that motion, however, has little bearing on the outcome of this motion, as the relief requested in entirely different.

Motion to Compel/Unseal

4

accompanying 924(c) counts (Counts 16-19 of Third Superseding Indictment). What Mr. Cloud seeks to discover is what happened to prompt Mr. Jackson's release from custody. And he is entitled to know; it is simply a matter of *when*, not *if*. Respectfully, it should be now, while it can still do Mr. Cloud some good.

## II. The Court Should Unseal Mr. Jackson's Docket Forthwith

### A. General Sealing Principles Compel Unsealing

"In the Ninth Circuit, there is a 'strong presumption in favor of access to court records,' including filings in criminal proceedings." *United States v. Alvarez*, 2015 U.S. Dist. LEXIS 5761, at *5 (N.D. Cal. Jan. 6, 2015) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003); *CBS, Inc. v. United States Dist. Court for Cent. Dist.*, 765 F.2d 823, 825 (9th Cir. 1985)). Further, while some proceedings involving sensitive matters, including a cooperating witness' dealings are best sealed or not available to members of the public, other proceedings, including transcripts of a cooperator's plea colloquy, should not be sealed in the first place[3]. *See, e.g.*, *United States v. Doe*, 269 Fed. Appx. 626, 627 (9th Cir. 2008) (noting that the "public has a qualified First Amendment right to access the defendant's plea colloquy, and that the government

---

[3] Mr. Cloud is not alleging that\Mr. Jackson is or has been a cooperating witness. We do not know because we have not been provided discovery on the matter or access to sealed materials, and at least in part, it is that very ignorance that we seek to address by this motion.

Motion to Compel/Unseal

has offered no compelling reason to seal references to defendant's cooperation" and rejecting argument that the district court abused its discretion in unsealing unredacted colloquy transcript). And while it may be necessary to seal certain sensitive matters, sealing, in general "must be no greater than necessary to protect the interest justifying it," and sealed documents "must be released when the danger of prejudice has passed." *United States v. Brooklier*, 685 F.2d 1162, 1172 (9th Cir. 1985).

It is difficult to see how the government can meet these standards when it is already known that Mr. Jackson, on a number of different occasions, provided information to the government that served to incriminate Mr. Cloud directly. The cat is out of the bag, so to speak. This is not a case involving, for example, the identity of a confidential source or *Roviaro*-type informant issues. *See, e.g.*, *United States v. LaForest*, 2019 U.S. Dist. LEXIS 175984, at *8-10 (C.D. Cal. Aug. 28, 2019) (denying defendant's request for unsealing information that would reveal identity of confidential informant and rival gang member, in case where threats to cooperating witnesses had been persistent throughout proceedings).

The government has turned over recordings, transcripts and memos as to Jackson's meetings with government agents on a number of different occasions. If he has formalized those efforts with a cooperation agreement and willingness to testify against Mr. Cloud and his co-defendant at trial, that would not come as a surprise, and surely that information will be made known to Mr. Cloud and his defense team in any event.

Motion to Compel/Unseal

Knowing it now causes no prejudice and no increased risk. And while the Indictment certainly charges both defendants with violent offenses, there does not appear to be evidence that, following their arrest, Mr. Cloud or his co-defendant, who both remain in custody, attempted to obstruct justice or intimidate witnesses. The nature of the charged offenses, by itself, does not justify keeping Mr. Jackson's docket and proceedings sealed. Moreover, any witness safety concerns or objections the government may have (without conceding that there is a genuine basis for such issues) would be adequately met by the protective order the Court issued as to limitations on what defense counsel may do with respect to government disclosures and unredacted discovery. ECF Document No. 209.

### B. *Brady* and *Giglio* Obligations Also Compel Disclosure

Whatever limited interest there is in keeping the requested materials sealed is outweighed by Mr. Cloud's need to defend himself against particularly serious charges (that carry particularly serious penalties), and to do so now, while such efforts might still benefit him. But that the requested documents also likely contain *Brady* material only provides even greater justification and need for their immediate unsealing and disclosure. They constitute *Giglio* disclosures [which is but a subset or particular kind of *Brady* material, *see infra*] because they likely contain information that could be used to impeach other government witnesses, in addition to Mr. Jackson himself. *See, e.g.*, *United States v. Rivaz-Felix*, 2013 U.S. Dist. LEXIS 55895, at *3 (E.D. Cal. Apr. 18, 2013) (noting that *Giglio* "extended the prosecution's disclosure obligation to evidence that is useful to the

Motion to Compel/Unseal

defense in impeaching government witnesses, even if the evidence is not inherently exculpatory"); *see also United States v. Bagley* 473 U.S. 667, 676 (1985) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule").

Specifically, the reliability and credibility of other government witnesses, namely LL, EZ, and possibly Mr. Jackson as well – and of their account that James Cloud shot DO or TH with a rifle he was holding – is directly called into question and undercut by their apparent misidentification (according to the government version) of Morris Jackson. *See United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009) ("*Brady* encompasses impeachment evidence, and evidence that would impeach a central prosecution witness is indisputably favorable to the accused"); *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) ("*Brady/Giglio* information includes material … that bears on the credibility of a significant witness in the case"). Both LL and EZ are central or significant government witnesses against Mr. Cloud, because their eyewitness identifications, along with whatever version of events Mr. Jackson would testify to at trial, constitute the direct evidence that he was responsible for shooting DO or TH. And evidence that the government disbelieves its central witnesses, at least as to their account that Jackson fired at DO's truck with a shotgun, is crucial to Mr. Cloud's ability to impeach other portions of their testimony, and the reliability of their purported identification as to him.

Motion to Compel/Unseal

8

Further, information about any benefits accorded to Mr. Jackson in exchange for his testimony would constitute paradigmatic *Giglio* materials[4] in their own right. *See, e.g., Benn v. Lambert*, 283 F.3d 1040, 1057 (9th Cir. 2002) (noting that benefits given to a government informant fall under *Brady* and *Giglio* because learning about them permits the jury to "reasonably conclude that [the witness] had a motive other than altruism for testifying on behalf of the [prosecution, and] could have substantially impeached [the informant's'] credibility as a witness") (quoting *Singh v. Prunty*, 142 F.3d 1157, 1162 (9th Cir. 1998)).

### C. The Court Should Order Disclosure Immediately

A fundamental tenet of *Brady* case law is that the timing of various disclosures matters. Numerous cases make the point that *Brady/Giglio* disclosures need to be made at a point in time [now, in our case] when the defense can make effective use of them. *See, e.g., Kyles v. Whitley*, 514 U.S. 419, 433, 437 (1995); *United States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993) (noting that disclosure must occur "when it is still of substantial

---

[4] Without question, the government is required to turn over such materials in advance of trial, and whatever dispute exists would only concern the timing of disclosures rather than whether such an obligation actually exists in the first instance. In addition, by statute, government attorneys are "subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a). In turn, the State of Washington's Rule of Professional Conduct 3.8(d) details the special responsibilities of a prosecutor, and requires him/her to "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense[.]"

Motion to Compel/Unseal

value to the accused"); *United States v. Cerna*, 633 F. Supp. 2d 1053, 1056-57 (N.D. Cal. 2009). It does a defendant little good and also violates due process when he receives such materials after the period when they might prove beneficial. *See United States v. Span*, 970 F.2d 573, 583 (9th Cir. 1992) (requiring that, to minimize prejudice, *Brady* material is turned over "at a time when disclosure would be of value to the accused") (quoting *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988)).

Where we are still acquiring evidence, obtaining discovery, interviewing witnesses and so forth, it is important to acquire the requested materials *now*, to see where they fit in with and accommodate Mr. Cloud's defense theory. Both LL and EZ identified Morris Jackson as the man in blue who warned the people in the truck that JC was not seeing visitors, and who later wielded a shotgun, shooting in the direction of the fleeing truck, and striking both LL and EZ. To the extent the unsealed materials directly or indirectly call that account into question and therefore the reliability of the other LL and EZ identifications, these are issues that Mr. Cloud needs to know now. Not at trial, nor on the eve of trial. And certainly not after trial.

And at a more practical level, the requested materials likely have an impact on prospective additional eyewitness identification litigation or a prospective motion to reconsider the Court's previous order denying Mr. Cloud's motions to suppress and/or exclude identifications made by JV, LL and EZ. Certainly they touch on the factual underpinnings the Court relied on in denying those motions. The Court will also recall

Motion to Compel/Unseal

the government's disclosure of a report indicating that Witness 26 was present at the Medicine Valley residence on June 8, and purportedly identified James Cloud as one of the males who arrived at the property in a red Chevrolet Blazer, and was carrying a shotgun over his shoulder.  Given the interplay between eyewitness identification issues and Morris Jackson, it would be far more efficient to litigate these issues now rather than closer to or on the eve of trial.

Recent changes in the law make this clear, and mandate disclosure now.  The Due Process Protection Act resulted in changes to Fed. R. Crim. Pro. 5(f), such that "*on the first scheduled court date when both prosecutor and defense counsel are present*, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation under [*Brady*] and its progeny [.]" (emphasis added).  The DPPA likewise calls for promulgating a model order for use in each judicial council.  It is anticipated that when the Ninth Circuit promulgates its model order, it will emphasize a broad view of *Brady* and *Giglio* obligations that incorporates timely disclosure of favorable evidence used for impeachment purposes, even if not in admissible form, if it can lead to admissible evidence.  *See Price*, 566 F.3d at 913 n. 14.  This would be fully consistent with, for example, prevailing DPPA language in the District of Idaho, as agreed to by that U.S. Attorney's Office.

This Court previously denied Mr. Cloud's motion to amend the Due Process Protection Act language [ECF Document Nos. 265 & 287], although its order hardly

Motion to Compel/Unseal

excuses the government from its pre-existing obligation. In any event, following arraignment on the Third Superseding Indictment, Judge Dimke ordered the Government to "produce all exculpatory evidence to the defendant pursuant to *Brady* []), and its progeny." ECF Document No. 263, at 2-3. Thus, immediate disclosure falls easily within the scope of that more narrowed directive, even if the Ninth Circuit does not endorse a more fulsome order.

### III. **Conclusion**

Finally, concealment or non-disclosure of the requested materials is inconsistent with the spirit of open, timely and prompt disclosure reflected in this Court's case management deadlines and more informal expectations. Examples include the Court's order as to unredacted discovery [ECF Document No. 230] and its prior handling of related issues that have surfaced to date. *See, e.g.*, Transcript of Eyewitness Identification Hearing, at 288 (cautioning the parties that the Court "expect[s] an equal exchange of discovery going both ways"); Transcript of Status Conference, October 27, 2020, at 20-21 (expressing "concern" and "disappointment" as to previously undisclosed report on witness' purported identification of Mr. Cloud at Medicine Valley residence before imposing sanctions on government[5]). The Court should continue in this vein. For all of

---

[5] The Court noted further that: "It's the expectation of this Court that the Government, and, likewise, the defense, produce discovery in this case on an ongoing basis. It's the expectation of this Court that, when it has information, the Government produce the discovery that it has at the time. We're

Motion to Compel/Unseal

these reasons, Mr. Cloud respectfully asks this Court to order unsealed the custodial release proceedings and other filings in Morris Jackson's separate case docket.

Dated:   April 13, 2021

Respectfully submitted,

S/Jeremy B. Sporn
Jeremy B. Sporn, NY 4779310
Attorneys for James D. Cloud
Federal Defenders of
Eastern Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
Email: Jeremy_Sporn@fd.org

---

not playing games here. These individuals are facing very serious crimes, where penalties could put them in jail for the rest of their lives." *Transcript of October 27, 2020 Status Conference*, at 20.
Motion to Compel/Unseal

# CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: THOMAS J. HANLON, RICHARD C. BURSON, Assistant United States Attorneys.

S/Jeremy B. Sporn
Jeremy B. Sporn, NY 4779310
Attorneys for James D. Cloud
Federal Defenders of
Eastern Washington and Idaho
306 East Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
Email: Jeremy_Sporn@fd.org

Motion to Compel/Unseal